# State of Vermont v. Robert S. Reuschel

[312 A.2d 739]

No. 33-71

Present: Barney, Smith, Keyser and Daley, JJ., and Hill, C. Supr. J.

Opinion Filed December 4, 1973

*Patrick J. Leahy,* State's Attorney, for the State.

*Bernard Lisman, Esq.,* Burlington, for Defendant.

**Keyser, J.** The respondent was convicted of first degree murder of Leopold Charette on July 25, 1970, by verdict of the Chittenden County jury on January 27, 1971. He was a minor at the time of trial and the court appointed respondent's aunt as his guardian *ad litem.* The court stayed judgment, sentence and execution pending appeal under 13 V.S.A. § 7401. The respondent contends there was error in four respects: (1) prejudicial error by the instruction of the court to the jury on *voir dire* that the death penalty could not be imposed in the case; (2) insufficient evidence of premeditation; (3) inadmissibility of State's Exhibit 25; and (4) the court's refusal to accept the minor respondent's plea to second degree murder over the objections of his guardian *ad litem.*

I.

During the *voir dire* one juror was asked if the state proved its case beyond a reasonable doubt would he have any difficulty in returning a guilty verdict. He stated he didn't know what the maximum penalty was in this state but was opposed to capital punishment, and if the state does that, he could not (return a guilty verdict) as he didn't believe in that. The court in light of this statement then told the jury "that it is not up to the jury to determine the penalty in this case. The only function of the jury in this case will be to determine the guilt or innocence of the respondent." Later during the *voir dire* the court stated to the jury:

Ladies and gentlemen, as I indicated to you this morning as a result of the questions asked . . . by the State's Attorney, you should not be concerned about the penalty that might be imposed in this case in the event a guilty verdict is returned. However, I will advise you that the Court does not have the power to impose the death penalty.

The respondent argues that the statement of the court raised the issue of sentencing in the minds of the jury and was prejudicial error.

We cannot agree that the issue of sentencing was raised by what the court said to the prospective jurors on *voir dire*. The court emphasized their only function was to determine the respondent's guilt or innocence and stated only that the court did not have the power to impose the death penalty. The court carefully avoided stating what sentences could be imposed depending on what verdict was returned. This theme that the case was to be decided on the evidence ran throughout the *voir dire*.

Also, the charge of the court clearly shows that the court with accuracy and minute detail instructed the jury on two occasions what the issues were for their determination. It also told the jury of the various verdicts it might render in accordance with what it found the facts to be. The record refutes any claim that there was a choice of penalty for the jury following any of the possible verdicts that it might render. The final sentence of the court's instructions was— "Return your verdict strictly on the evidence, applying the rules which we have given you, without passion, pity, sympathy, or prejudice, and you will have fulfilled the requirements of your oath."

It should not be presumed that the jurors would depart from issues given them in charge by the court in its instructions, contrary to their oath. *Children's Home, Inc. v. State Highway Bd.*, 125 Vt. 93, 100, 211 A.2d 257 (1965). On appeal we must assume that the jury abided by the instructions of the court. There can be no assumption under our system of jurisprudence that the jury will disregard the instructions of the trial court. *Lewis v. Gagne*, 123 Vt. 217, 219, 185 A.2d 468 (1962).

In addition, the respondent has failed to sustain his burden of showing that he has been prejudiced by the statement of the court. This exception is without merit.

## II.

Respondent next contends the court erred in charging first degree murder to the jury because sufficient evidence of premeditation did not appear in the record.

To constitute murder in the first degree, the killing must have been wilful, malicious and premeditated. *State* v. *Bradley*, 64 Vt. 466, 472, 24 A. 1053 (1892). "Every premeditated act is, of course, a wilful one; and deliberation and premeditation simply mean that the act was done with reflection and conceived beforehand. No specific length of time is required for such deliberation." *State* v. *Carr*, 53 Vt. 37, 46 (1880). The court there stated "Every case must rest on its own circumstances."

The uncontradicted evidence bearing on the issue of premeditation was that the respondent, Stephen Mulliss and Leopold Charette were together at a camp in Charlotte on July 25, 1970. The respondent by voluntarily admissions made to several persons told what occurred at the camp. The gist of their testimony was that Mulliss went upstairs to shoot Charette but came back down and told respondent he couldn't do it. They had an argument about which one was going to do it. The respondent grabbed the gun and went upstairs. He turned left to the far end of the hall and went into the room where Charette was and shot him three times.

The respondent did not testify and this evidence was not challenged in any respect. The evidence at hand, if believed by the jury, established beyond question that the act of the respondent was done wilfully, deliberately, and "with reflection and conceived beforehand." It was for the jury to determine the question of premeditation on the evidence presented and the law given it by the court. We find no error in the charge of the court as respondent alleges in this exception.

## III.

The respondent alleges the court erroneously admitted

State's Exhibit 25. The respondent and a Mr. Drapo, one of the state's witnesses, were confined in state prison but before trial of the case were transferred to the Regional Correctional Center. They have known each other for about eight years. This exhibit was a letter sent by the respondent to Drapo in answer to one from Drapo while they were at the Correctional Center. It was at the prison in December, 1970, that the respondent told Drapo in the presence of Blow, another inmate, referring to Charette, that "he had shot him." They both agreed not to testify against the respondent.

At first Drapo denied to the state's attorney that he had heard any such statement from the respondent. A few days before trial the respondent knew Drapo was going to be a witness and didn't want him to testify to what he had told him. Drapo told respondent in his note that he had talked with his lawyer and there was no sense in perjuring himself at the trial.

Respondent's note to Drapo contained obscene language which respondent claimed was damaging to his chances for success at the trial. The letter replies to the contents of what Drapo said in his note to respondent with statements in substance like these: why did you tell your lawyer; don't give me that about perjury; how are they going to prove perjury; I don't care what you told your lawyer; if you could put Blow down you would be saving my life; I hope you don't do what you're planning; I'm disappointed in you.

One ground of the state's offer of the exhibit was that the letter shows "a consciousness on the part of Robert Reuschel of the fact that what he [Drapo] is now saying is indeed the truth." In other words, that the letter shows a consciousness of guilt.

Drapo testified he was acquainted with the printing style of respondent's handwriting because the respondent had written things for him; that the handwriting of the letter appeared to be that of the respondent and that he received the letter after he sent the note to the respondent. This uncontradicted evidence clearly identified the exhibit as being written and from the respondent and laid a proper foundation for its admission on this ground con-

560

trary to respondent's claim. See *State* v. *Lacaillade,* 131 Vt. 161, 163, 303 A.2d 131 (1973).

The respondent relies on *State* v. *Beyor,* 129 Vt. 472, 282 A.2d 819 (1971), in support of his claim of prejudicial error. In that case testimony was adduced on cross-examination on various matters of conduct, apart from the crime charged, to test the respondent's credibility. This Court held that it was too prejudicial to receive as evidence saying "Their impact on the jury is such to plainly divert them from the true issue of guilt or innocence of the crime charged."

This does not apply to the instant case. The letter did not introduce issues not connected with the true issue of guilt or innocence of the crime charged. It was directed straight to that issue and in view of the overwhelming evidence of respondent's guilt it can hardly be said that it could have diverted the minds of the jury from their duty to return a true verdict.

 The contents of the letter relative to perjury and putting down Blow was in the vein of asking Drapo to testify contrary to the true facts about the respondent's admission of having shot and killed Charette made to Drapo and Blow. This was a clear indication of consciousness of guilt on the respondent's part. The fact that the letter contained several vulgar and obscene words did not make the exhibit inadmissible.

 In the light of all the evidence, we cannot say, as a matter of law, that the admission of Exhibit 25 was prejudicial error. The rule applies that places the burden on the respondent to make an affirmative showing of prejudice. *State* v. *Jackson,* 127 Vt. 237, 238, 246 A.2d 829 (1968). This the respondent has failed to do.

IV.

The respondent claims that he was wrongfully and improperly prevented during trial from entering a plea of guilty to second degree murder, that the verdict should be vacated and his plea of guilty to second degree murder should be ordered. All of the proceedings regarding this was out of the presence of the jury.

Prior to the opening statements of counsel the respondent made it evident he wished to change his plea to guilty of second degree murder. The state had no objection to this. The court informed respondent of his rights but when asked to indicate what his plea was, the respondent said, "I have made up my mind, and I wish to see the evidence against me."

Later, during trial the respondent changed his mind and again desired to plead to second degree murder. There was an extensive colloquy between the court, the respondent and his guardian *ad litem;* also the state's attorney reviewed for the court the state's evidence not yet presented. The respondent told the court his plea was guilty to the charge of second degree murder. However, when the Court asked the guardian *ad litem* if she agreed to the entry of the plea, she replied, "I don't believe he is guilty of any murder." Then she said that because the respondent wanted her to agree, she agreed that it was a proper plea but moments later she again told the court, "I don't think he is guilty."

After a recess she repeated that she was going to have to agree because if she didn't the respondent would kill himself. Court was then recessed for the noon hour after which there was further interrogation of respondent and his guardian *ad litem* by the court. The pattern of vacillation continued. Respondent said he didn't know if he killed Charette and couldn't say he did or didn't; that maybe he did and that was why he wanted to enter the plea of guilty. Mrs. Clapper, the guardian *ad litem,* said she thought respondent did it, then she didn't think he did and, having known him since he was two years old, she knew he would never do such a thing. After this the court ruled that it was not going to accept the plea following which the state withdrew its sanction of a plea to second degree murder.

The court's inherent jurisdiction and authority to accept pleas of guilty is necessary to the administration of criminal law. While respondent indicted on a charge of first degree murder has no right to insist on the acceptance of a plea of guilty, the court, nevertheless, in the exercise of its discretion, has the power to accept such a plea, if it deems it wise to do so. *State* v. *Douglas,* 150 Me. 442, 114 A.2d 253, 256 (1955). A tendered or offered plea should not be refused

without good reason but, if refused, must be shown that the court abused its discretion.

Here there was an apparent conflict between the respondent and the guardian *ad litem* on the matter of a plea. The appointment of a guardian *ad litem* of a minor charged with felony must be complied with and may not be waived by the minor. *In re Dobson,* 125 Vt. 165, 167, 212 A.2d 620 (1965). The intent and effect of guardianship is to remove the handicap of infancy enabling the court to deal with the minor as though he had attained full age. *In re Mears,* 124 Vt. 131, 137, 198 A.2d 27 (1964). The lack of factual basis for the plea would be ample reason for the court in its discretion to refuse to accept the plea.

When doubts arise in the mind of the court, as they did here, regarding the voluntariness of the plea by the respondent and his guardian *ad litem* its only course of action was in favor of the jury trial, the whole purpose of which is to protect the rights of the respondent.

Here, the tendered plea was to a lesser offense than the one charged and the court had the absolute right in its discretion to reject it. On the facts and circumstances of this case, it is apparent the court decided that it was neither satisfied nor justified in accepting the respondent's tendered plea. The record demonstrates a solid basis for the court exercising its discretion in the manner it did. There is no error.

*Judgment affirmed.*