2004 VT 8A

## State of Vermont v. Kent Swift

[844 A.2d 802]

No. 02-414

Present: Amestoy, C.J., Dooley, Johnson and Skoglund, JJ., and Allen, C.J. (Ret.), Specially Assigned

Opinion Filed February 27, 2004

*William H. Sorrell*, Attorney General, and *John Treadwell*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Allison Fulcher* of *Martin and Associates*, Barre, and *Kent Swift*, Pro Se, Jarratt, Virginia, for Defendant-Appellant.

¶ 1. **Johnson, J.** Defendant appeals his conviction for one count of second-degree aggravated domestic assault in violation of 13 V.S.A. § 1044, and two counts of obstruction of justice for threatening a witness in violation of 13 V.S.A. § 3015. Defendant claims that the trial court erred by refusing to instruct the jury on simple assault, which is a lesser-included offense of second-degree aggravated domestic assault. Alternatively, defendant asserts that the jury instruction impermissibly limited the jury's ability to doubt the complaining witness's credibility, and thereby violated his constitutional right of confrontation. We affirm the trial court's decision not to instruct the jury on simple assault. We reverse and remand for a new trial because the court's instruction prejudicially impinged upon the jury's duty to weigh the evidence.

¶ 2. On July 26, 2000, defendant assaulted Cindy Lawrence, his then girlfriend. The following day, defendant was arraigned on domestic assault charges. At arraignment, the court imposed conditions of release that, among other things, prohibited defendant from contacting or harassing complainant Cindy Lawrence, and from being within 1000 feet of her, her home, or her place of employment. Despite those conditions, defendant went to complainant's home on August 10, 2000 where he allegedly threatened her. On August 24, 2000 defendant allegedly

threatened plaintiff again, and punched her in the head. Defendant was subsequently arraigned and tried on one count of second-degree aggravated domestic assault and two counts of obstructing justice in the matter of his earlier assault on complainant.

¶ 3. At trial, complainant testified that she "dated the defendant" and lived together with him in a Barre apartment from January 2000 to July 2000. When asked on direct if she had a sexual relationship with defendant, she responded affirmatively. She was not cross-examined on any of this testimony. Defendant did not introduce any evidence on the issue.

¶ 4. After the close of the State's case, defendant moved for judgment of acquittal. The motion challenged the sufficiency of the State's evidence that complainant was a "household member" of defendant for purposes of the domestic assault statute, 13 V.S.A. § 1044(a)(1). In the context of the motion, defendant conceded that the evidence showed that he had a sexual relationship with complainant and that he had lived with her for approximately six months in 2000. Defendant argued that complainant's admittedly uncontroverted assertion that she had a sexual relationship with defendant and had lived with him for six months — without more — was insufficient to meet the State's burden of proof on the "household member" issue. The judge denied the motion, specifically stating that he believed the State had enough evidence on the issue.

¶ 5. The following day, defendant objected to the judge's decision not to give the jury an instruction on simple assault, a lesser-included offense of domestic assault. Defendant argued that the jury should have had the option to convict on the simple assault offense in the event that it decided that the State had not established the "household member" element of domestic assault beyond a reasonable doubt. The judge found this argument unpersuasive, and stated that "the evidence about domestic partner [household member] just seems totally uncontested and uncontroverted."

¶ 6. On appeal, defendant renews his argument that the judge should have instructed the jury on simple assault as well as domestic assault. The State correctly concedes that the elements of simple assault are incorporated within the elements of second-degree aggravated domestic assault, and thus simple assault is a lesser-included offense. Nonetheless, the State maintains that defendant failed to present evidence or contradict the State's evidence on the "household member" element that distinguishes the two offenses, and thus defendant was not entitled to a simple assault instruction. The record provides ample support for the State's position.

¶ 7. As a general rule, a defendant is entitled to an instruction on a lesser offense than the offense charged if the elements of the lesser offense are necessarily included in the greater offense, and if the facts in evidence reasonably support such an instruction. *State v. Delisle*, 162 Vt. 293, 301, 648 A.2d 632, 637 (1994); *State v. Bolio*, 159 Vt. 250, 252, 617 A.2d 885, 886 (1992). The purpose of the rule is to "allow the jury to consider the evidence in the light of all of the alternative verdicts fairly presented, and not to have to elect between only a guilty verdict and an acquittal, where the evidence is susceptible of sustaining a lesser-included offense." *Bolio*, 159 Vt. at 254, 617 A.2d at 887. A defendant may be denied an instruction on the lesser-included offense when the evidence does not support the instruction. *State v. Alexander*, 173 Vt. 376, 383, 795 A.2d 1248, 1254 (2002); see also *Keeble v. United States*, 412 U.S. 205, 208 (1973) (evidence must be such that a jury could rationally find the defendant guilty of the lesser offense, yet acquit him of the greater).

¶ 8. For purposes of this appeal, the key distinction between the charged offense — second-degree aggravated assault — and the lesser offense — simple assault — is the identity of the victim. A simple assault becomes a domestic assault when it is perpetrated against a "family member," or, as is alleged here, a "household member." Compare 13 V.S.A. § 1044(a) (second-degree aggravated domestic assault incorporates the "household member" element from 13 V.S.A. § 1042) with 13 V.S.A. § 1023(a) (simple assault lacks the "household member" element). The definition of "household member," as used in the domestic assault statutes, is supplied by 15 V.S.A. § 1101(2): "'Household members' means persons who, *for any period of time*, are living or have lived together, are sharing or have shared occupancy of a dwelling, *are engaged in or have engaged in a sexual relationship* . . . ." (emphasis added); 13 V.S.A. § 1041 (incorporating the foregoing definition into the domestic assault statutes by reference).

¶ 9. No rational jury could have concluded that defendant and complainant were not "household members" for the purposes of the domestic assault statute. Defendant assaulted complainant on August 24, 2000. It appears from the evidence that this was only a short time after the complainant had moved out of the Barre apartment she shared with defendant for the six months prior to the assault. Under the statute, two persons are "household members" if they either lived together or had a sexual relationship at any time prior to the assault. The evidence shows complainant and defendant satisfied both of these alternative requirements. In light of the statute's broad temporal scope and defendant's concession that complainant's testimony about their relationship was

accurate, the question of whether defendant and complainant were household members was not something that a rational jury could reasonably doubt. Accordingly, defendant was not entitled to an instruction on the lesser-included offense. Therefore, we affirm the trial court's ruling on this issue.

¶ 10. We now turn to the question of the challenged jury instruction that concerns "evidence of tolerance of abuse." Though the State had not requested it, the judge offered the following instruction as a rule for weighing evidence:

> The law does not recognize evidence that a person remains in an abusive relationship as consent to abuse. Nor does the law recognize such conduct as evidence, by itself, to question the credibility of a complaining witness. To the contrary, the law recognizes that the more vulnerable partner in an abusive relationship will often remain in or return to this relationship for a number of fearful reasons. *The jury may find other reasons from the evidence to question the credibility of a witness regarding the issues; but the law does not recognize this fact of remaining in or returning to an apparently abusive relationship as evidence to question the witness' credibility.* (emphasis added).

¶ 11. The trial court denied repeated objections to this instruction before the jury retired. The State claims that defendant's objection lacked the specificity required to preserve this issue for appeal. This argument is unpersuasive. Defendant's objection referred to the precise sentences that were objectionable, and further stated that the issue of credibility goes to the heart of defendant's case. Defense counsel clearly communicated his fear that the jury charge would give the impression that both the cross-examination on this topic, and reference to it in closing argument, were in some way improper and should be disregarded by the jury. This trial objection closely parallels the substance of defendant's claim on appeal and therefore meets the specificity standards we have established in previous cases. See, e.g., *State v. Covino*, 163 Vt. 378, 380-81, 658 A.2d 916, 917-18 (1994) (explaining that purpose of the rule is to apprise the trial court of what defendant intends to preserve for appeal, and permit the trial court to correct the error in the first instance).

¶ 12. The instruction in this case, while well intentioned, was not supported by the evidence or the law. A defendant is entitled to jury instructions that are "full, fair, and correct on all issues, theories, and

claims" presented by the evidence. *State v. Day*, 150 Vt. 119, 123, 549 A.2d 1061, 1064 (1988) (internal quotations omitted). Improper jury instructions warrant reversal only when the defendant succeeds in demonstrating prejudice, i.e., a high likelihood that the erroneous instructions adversely affected the outcome of the case. See *id.* at 125, 549 A.2d at 1065. As the discussion below illustrates, the instruction was not fair to defendant because the State had not presented any evidence on Battered Women's Syndrome (BWS) to support the theory that the instruction articulates. Cf. *State v. Kinney*, 171 Vt. 239, 247, 762 A.2d 833, 840 (2000) (explaining that syndrome evidence is usually admissible in Vermont and "is typically admitted in evidence to assist the jury in understanding 'superficially bizarre behavior' of a putative victim, such as a child's ambivalence about pursuing a sexual abuse complaint, or a child's recantation of an earlier accusation"). Even if the State had presented such evidence, the instruction was incorrect on the law regarding the proper role of the jury in these cases.

¶ 13. At trial, the complainant was the only witness who offered direct evidence that defendant had committed the charged offenses. She testified that between July 26 and August 24 defendant repeatedly threatened her life in an attempt to get her to drop the charges stemming from an earlier domestic assault. She also testified that the threats escalated to violence on August 24 when defendant punched complainant in the head. Nobody other than complainant testified to having witnessed the threats or the punch; therefore, challenging her credibility was central to defendant's case.

¶ 14. On cross-examination, counsel for defendant attacked complainant's credibility by questioning her about a long series of contacts she had with defendant during the time that defendant was allegedly threatening her. Complainant testified that she voluntarily met with defendant on ten occasions between July 28 and August 10, the day that defendant allegedly broke into complainant's house and threatened her. The evidence shows that on several of these occasions complainant traveled with defendant in his van to visit several of his family members in Vermont and New Hampshire. These trips ranged from three to five hours.

¶ 15. During closing arguments, it was apparent that the defense had elicited the cross-examination testimony from complainant for the purpose of discrediting her testimony about the extent to which Mr. Swift was threatening her and perpetrating acts of physical violence against her. Counsel asked the jury to consider whether it was "credible for her to say he intimidated me? But then she would go to New York with him

on a trip or that they would travel to Mr. Swift's parents or they would travel down to West Lebanon?"

¶ 16. At the charge conference, the judge responded to defense counsel's objections to the instruction by saying:

> I think that's the current case law in Vermont that Vermont has followed the New Jersey Supreme Court and taken the position that the credibility issue as I've stated here that we do not recognize a person's remaining within an abusive relationship as a basis to doubt their credibility on the issues of abuse in the relationship. While there very well may be other reasons why the jury may choose to disbelieve her. That's not fair game.

¶ 17. The Vermont case that the judge was referring to was *Blair v. Blair*, 154 Vt. 201, 575 A.2d 191 (1990). In *Blair*, we reviewed a trial court's property distribution in a divorce case. The wife testified about continuing physical abuse during the course of a four year marriage. The judge made extemporaneous findings that rejected the wife's testimony as not credible. The judge cited the fact that the wife remained in the relationship as evidence that her abuse allegations were "blown up by her own hurt with what happened to the marriage." *Id.* at 204, 575 A.2d at 193.

¶ 18. This Court ruled that the judge's conclusions were rendered suspect because they were based on the popular misconception that an abuse victim is free to leave her abuser at any time. *Id.* Besides a series of scholarly articles that explained Battered Women's Syndrome, this Court cited a string of cases where other state supreme courts had, in various contexts, acknowledged that the failure of an abuse victim to leave her abuser is a common occurrence that is explained by numerous social and psychological factors. *Id.*

¶ 19. Most of the cases cited by the Court in *Blair*, including the New Jersey case, *State v. Kelly*, 478 A.2d 364 (N.J. 1984), referred to in the judge's ruling on the objection to the challenged instruction, were cases where the abuse victim was accused of killing her abuser and had introduced expert testimony on BWS as part of a justification or self-defense argument. The exception is *State v. Ciskie*, 751 P.2d 1165 (Wash. 1988). In *Ciskie*, the Washington Supreme Court was required to decide whether expert testimony on BWS would be helpful to the trier of fact where an adult victim was engaged in an intimate relationship with the accused, where several attacks occurred, and yet the victim failed for a number of months to end the relationship, either by breaking it off or reporting the attacks to law enforcement authorities.

¶ 20. Neither *Blair*, nor most of the cases cited in *Blair*, present the issue the Court must resolve in the present case. *Blair* is distinguishable both because it was tried to a judge not a jury, and more importantly because it was not a criminal case and so did not require special sensitivity to the rights of the defendant. The other cases cited in *Blair* and discussed here also do not lend support to the trial court's instruction because in each of those cases there was some evidence presented to the jury about BWS. Accordingly, neither *Blair*, nor the dicta in cases cited, support the proposition that, as a matter of law and in the absence of expert testimony on the subject of BWS, a victim's credibility cannot be challenged in a criminal case by reference to her continued voluntary contact with the accused abuser.

¶ 21. As the cases recognize, a victim truly suffering from BWS will, for various complex reasons, act in ways that may seem counterintuitive to the average juror. It is up to the prosecution, not the judge, to recognize this potential for juror confusion and offer appropriate expert testimony on BWS that will help the jury understand an alleged victim's actions. See *State v. Grecinger*, 569 N.W.2d 189, 196 (Minn. 1997) (admitting expert testimony on BWS offered in the state's case-in-chief reasoning that "it could help the jury understand behavior that might otherwise undermine the complainant's credibility"). Even after such testimony is presented, it still remains for the jury to decide whether or not they believe complainant's version of events. See *id.* at 197 (detailing the limitations that must be placed on a BWS expert's testimony); see also California Jury Instructions — Criminal 9.35.1 Cautionary Instruction Battered Women's Syndrome (detailing limited uses of BWS evidence).

¶ 22. "We have long recognized that judging the credibility of witness testimony is a duty left to the jury." *State v. Couture*, 169 Vt. 222, 227, 734 A.2d 524, 528 (1999) (and cases cited). Though there may be apparent contradictions in the evidence, we have consistently held that "it is the exclusive province of the jury, as finders of fact, to resolve the contradictions and decide who to believe." *State v. Tenney*, 143 Vt. 213, 216, 464 A.2d 747, 748 (1983) (internal quotations omitted). The trial court's instruction amounted to an injunction to the jury to disregard relevant testimony that was favorable to defendant's theory of the case even though the trial court had permitted extensive development of the very same testimony on cross-examination. This was especially damaging in the present case because the central question the jury had to decide to convict on this charge was whether defendant had threatened complainant on two occasions, and also assaulted her on one of those occasions. If it chose to discredit complainant's testimony because her testimony about

ongoing contact with defendant was inconsistent with her claim that she was constantly being threatened by defendant, then the State would have been left with little evidence to support a guilty verdict. The trial court did leave the jury with the option to "question" complainant's credibility for reasons other than tolerance of abuse. This option was essentially meaningless, however, because the record as it pertains to this count does not reveal any other grounds to doubt complainant.

¶ 23. By taking the issue of complainant credibility away from the jury, the trial court's instruction erroneously deprived defendant of his main argument for acquittal. As a result defendant's case was prejudiced and the conviction requires reversal.

*Reversed and remanded for a new trial consistent with the views expressed herein.*