2006 VT 84

## State of Vermont v. Stephen Desautels

[908 A.2d 463]

Nos. 04-397 & 05-115

Present: **Reiber, C.J., Dooley, Johnson and Burgess, JJ., and Allen, C.J. (Ret.), Specially Assigned**

Opinion Filed August 11, 2006

190

Deborah A. Celis, Christopher C. Moll and John T. Lavoie, Franklin County Deputy State's Attorneys, St. Albans, for Plaintiff-Appellee.

Allison N. Fulcher of Martin & Associates, Barre, for Defendant-Appellant.

¶ 1. **Johnson, J.** Defendant appeals after jury trial from two convictions for sexual assault and one conviction for second degree domestic assault. Defendant contends the evidence was insufficient to prove beyond a reasonable doubt that the second sexual assault was compelled, and that the State failed to produce evidence on the specific sexual conduct required by both sexual assault charges. Defendant also claims he was prejudiced at trial by the erroneous admission of certain pieces of evidence and by the prosecutor's closing argument regarding relationships marked by domestic violence. We affirm.

¶ 2. According to the evidence presented by the State at trial,[1] the charges against defendant arose out of an altercation he initiated when he learned that the victim, a former girlfriend with whom he had previously lived in Richford, had a male guest in her apartment in Enosburg. Defendant came into the victim's apartment uninvited. He was angry and attacked the victim verbally, shouting at her and using profanity. He slapped her hard in the face, causing injury to her lip. The victim's son witnessed the beginning of the encounter and ran across the street to get help. The police were called, and a trooper came to the apartment. When the trooper arrived, he spoke to the victim and observed that she had an injury to her lip. Despite the trooper's efforts, the victim did not cooperate and told the trooper she did not need any help.

---

[1] The facts as stated were disputed at trial; the central issue defendant raised was the credibility of the victim as to whether the acts alleged took place, and to what extent she consented to the sexual acts alleged. For the purposes of reviewing the sufficiency of the evidence, we view any disputed facts in the light most favorable to the verdict. State v. White, 172 Vt. 493, 497, 782 A.2d 1187, 1190 (2001). For all other purposes in this appeal, any remaining factual disputes are irrelevant to our decision.

¶ 3. Shortly thereafter, the fight resumed, and defendant began punching the victim in the stomach. Defendant then sexually assaulted her by ripping her underwear off and shoving his hand in her vagina to see if she had had sex with another man. He forced her to perform fellatio and have vaginal sex with him despite her verbal and physical protestations. Defendant tried to get the victim to leave the apartment with him, but she refused, and he eventually left the apartment alone.

¶ 4. While defendant was gone, the victim left the apartment for a while and went to a neighbor's home, but returned home to be with her children at around 11 p.m. Shortly thereafter, defendant returned to the victim's home. The victim was afraid defendant would become violent if she did not let him in, so she instructed her children to open the door. Defendant was still angry and called the victim a whore. The victim then accompanied defendant into the bedroom, where they engaged in sexual activity. Throughout defendant's second visit, the victim was upset and crying. The victim testified that she was afraid of defendant, and did not think she could refuse him. After this encounter, defendant again tried to convince her to leave with him, but she refused because she was afraid she would be killed. Defendant left the apartment, but returned a few hours later. The victim found him standing over her bed. They had sexual relations again, which the victim described as consensual, although she also said she was afraid and did not know what to do.

¶ 5. Within a few days, the victim tried to commit suicide. She was interviewed in the hospital by a detective, but she refused to cooperate with any investigation of the assault. After leaving the hospital, she continued to have some contact with defendant that suggested the relationship was continuing. In December 2002, defendant was arrested, charged, and held without bail on sexual assault and domestic assault charges. The victim was an uncooperative witness at the bail hearing. During a period of time while defendant was detained, defendant wrote numerous letters attempting to influence the victim's testimony in his favor. These letters came to light when the victim again tried to commit suicide in January 2003, as the letters were found next to her when she was discovered unconscious. A search warrant revealed other letters of the same kind. Some letters referred to another document, not produced at trial, but described by testimony, that was a nine-page script defendant had written, telling the victim what to say at his trial and how to control the testimony of other witnesses. In February 2003, the victim finally gave a statement about the assaults that implicated defendant.

¶ 6. As a result of the first and second sexual encounters described above, but not the third, defendant was charged with two counts of sexual assault, by penis-to-vulva contact without consent, in violation of 13 V.S.A. § 3252(a)(1), and two counts of second or subsequent offense of domestic assault, by recklessly causing bodily injury, in violation of 13 V.S.A. § 1044(a)(2).[2] One count of domestic assault was dismissed by the trial court and is not at issue in this appeal. The jury convicted on the remaining counts, and defendant appealed.

## I. Motion for Judgment of Acquittal

¶ 7. Defendant's principal argument on appeal is that the trial court erred in denying his motion for judgment of acquittal, in which he claimed there was insufficient evidence to show that the second sexual encounter was compelled and without consent. In reviewing the sufficiency of the evidence to support a conviction, we take the evidence in the light most favorable to the State, excluding any modifying evidence. *State v. Gibney*, 2003 VT 26, ¶ 2, 175 Vt. 180, 825 A.2d 32. We agree with the trial court that the motion was properly denied. To convict defendant of sexual assault under 13 V.S.A. § 3252(a)(1)(A), the State was required to prove that he engaged in a sexual act with the victim without her consent. For the purposes of the statute, "'[c]onsent' means words or actions by a person indicating a voluntary agreement to engage in a sexual act." 13 V.S.A. § 3251(3). Proof of resistance is not required to show lack of consent. 13 V.S.A. § 3254(1). Here, the evidence tended to show some cooperation by the victim during her second sexual encounter with defendant, but not consent. It could be inferred from the victim's testimony that her cooperation arose out of fear of defendant, based on the violent physical and sexual assault occurring only a few hours earlier, his continuing anger, as demonstrated by his verbal abuse, and fear for her children's safety. The victim testified that although she may have told defendant that she loved him and that she was sorry, she communicated her fear by shaking and crying throughout the second sexual encounter. Even her earlier reluctance to involve the police officers who tried to intervene could be viewed as evidence of the degree to which she feared retaliation from defendant for noncompliance with his wishes. The victim's ac-

---

[2] Defendant had been convicted of a previous domestic assault on October 14, 1997.

tions were consistent with the State's theory that her cooperation with the second sexual encounter was an attempt to keep defendant under control and avoid further violence. Looking at all of the evidence surrounding the second sexual assault, we conclude there was sufficient evidence for the jury to find beyond a reasonable doubt that the victim did not consent.

¶ 8. The second issue raised in defendant's motion challenged both convictions for sexual assault on the ground that the State failed to prove an element of the charge of sexual assault, namely, penis-to-vulva contact. The sexual assault statute, in relevant part, defines "sexual act" as "contact between the penis and the vulva." 13 V.S.A. § 3251(1). The victim's testimony used words such as "had sex" or "had sexual intercourse" and that defendant "raped" her. She also said that sex meant that defendant's penis went inside her. In telephone calls that were admitted into evidence, defendant referred to the sexual encounter as "we made love." These descriptions of the acts were sufficient for the jury to have inferred that penis-to-vulva contact occurred. The State's evidence was therefore sufficient to satisfy that element of the charge, and the court did not err in denying defendant's motion for judgment of acquittal.

## II. Motion for a New Trial

¶ 9. In conjunction with his motion for judgment of acquittal, defendant moved for a new trial under Vermont Rule of Criminal Procedure 33. In this motion, defendant contended he was denied a fair trial when the investigating officer, Trooper Ingrid Jonas, testified that she had located defendant for questioning at the office of his parole officer. Defendant claims the testimony was prejudicial because it indicated to the jury that defendant had a serious prior conviction for which he had spent time in prison. Defendant relies on *State v. Shuttle*, 126 Vt. 379, 381, 230 A.2d 794, 796 (1967), in which the State's witness testified twice that he met the defendant in prison. Additionally, during closing argument in that case, the state's attorney emphasized the defendant's previous incarceration. We reversed the conviction because we viewed the actions of the state's attorney as an attempt to prejudice the jury as to the defendant's character. *Id.* at 382, 230 A.2d at 797.

¶ 10. A Rule 33 motion is addressed to the discretion of the court and permits the court to grant a new trial if one is warranted in the "interests of justice." V.R.Cr.P. 33. Our review is limited to whether the trial court abused its discretion. *State v. Aiken*, 2004 VT 96, ¶ 9, 177 Vt. 566, 862 A.2d 285 (mem.). This determination must be made in the

context of a particular case, and "'there is little profit in comparing one case with another.'" *State v. Francis*, 151 Vt. 296, 299, 561 A.2d 392, 394 (1989) (quoting *State v. Parker*, 104 Vt. 494, 500, 162 A. 696, 699 (1932)). The trial court denied defendant's motion because it concluded Trooper Jonas's statement was one minor reference, made in passing on another subject, and it was not repeated by the trooper or used by the state's attorney in a prejudicial manner. Cf. *id.* (stating that prejudice from improper closing argument should be judged according to such factors as blatancy and frequency of expression and impact on theory of defense). The trial court found the remark insignificant in the context of a trial where defendant's incarceration was discussed regularly, and where jurors were unlikely to realize that defendant's parole was necessarily the result of a prior prison sentence, let alone for a "serious" offense.

¶ 11. We cannot conclude that the court abused its discretion. The trial court is in the best position to assess whether any comment, in the context of the trial before it, is prejudicial enough to warrant a new trial. *State v. Mears*, 170 Vt. 336, 346, 749 A.2d 600, 607 (2000). Here, the trooper's remark was not obviously intended to prejudice the jury, and it appears insignificant in the context of the evidence. The remark was not the focus of the trooper's testimony, and it was not deliberately elicited or repeated by the state's attorney. Even if the jury realized as a result of the trooper's testimony that defendant had a prior conviction, prejudice is determined on the basis of the entire proceedings. *State v. Rebideau*, 132 Vt. 445, 449, 321 A.2d 58, 61 (1974). In the context of the evidence against defendant, including the testimony of the State's witnesses and defendant's letters from jail attempting to "script" the trial, we cannot conclude that the incidental remark was so damaging that it swayed the jury toward a conviction.

## III. Evidentiary Issues

¶ 12. Defendant next contends the court committed multiple errors in its admission of evidence. We review the trial court's evidentiary rulings under a deferential standard, reversing only when there has been an abuse of discretion that resulted in prejudice. *State v. Ovitt*, 2005 VT 74, ¶ 8, 178 Vt. 605, 878 A.2d 314 (mem.). Defendant first claims the trial court erred in allowing the victim's son to testify that defendant had punched him in the face a few months prior to the sexual assaults at a time when the victim, her son, and defendant all lived

together in Richford. Defendant argues on appeal that the son's testimony was not relevant to any issue in the case, and that it was highly prejudicial because it tended to show defendant had a violent character. Therefore, defendant argues, it should have been excluded under Vermont Rule of Evidence 404(b), which limits the admission of evidence of prior crimes or bad acts, and Rule 403, which provides for the exclusion of evidence when its prejudicial effect outweighs its probative value.[3]

¶ 13. Prior to trial, defendant moved in limine to prohibit the State from introducing any evidence of the assault, but stated no specific grounds for exclusion in the motion. The court deferred ruling until trial. The issue surfaced during the redirect testimony of the son, when the State requested permission to inquire into the prior assaults, arguing the evidence was necessary to show a complete picture of the son's actions and to make them understandable to the jury. Defendant's counsel responded that the redirect testimony was unnecessary because he had specifically stayed away from the subject of the son's actions in response to the situation and his reasons for those actions. No ruling was stated by the court, and the testimony simply resumed in accordance with the State's request.

¶ 14. We can infer that the court ruled in the State's favor, but we have no basis for reviewing defendant's claim that the court should have excluded the evidence under Rules 404(b) or 403. The record does not reflect that defendant cited any ground for exclusion other than the brief objection stated at trial. Nor did defendant ask the court to balance the probative value of the evidence against its prejudicial effect under Rule 403, either in the written pretrial motion or at trial. Moreover, defendant did not move to correct the silence of the record pursuant to Vermont Rule of Appellate Procedure 10(e). We need not determine whether defendant's objection was sufficient to preserve this issue for appeal, however, as we conclude there was no error in admitting the evidence.

¶ 15. Under Rule 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." V.R.E. 404(b). The rule also contains numerous exceptions, however, that allow admission of the evidence if relevant for some other purpose, and the list contained in the rule is not exclusive. V.R.E. 404(b) (stating that prior bad act

---

[3] Defendant was charged for the assault on the son, but the count was severed from the sexual-assault trial.

evidence "may ... be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident"). Such evidence remains subject to the provisions of Rule 403, which states that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." V.R.E. 403.

¶ 16. Here, the purpose of the testimony was not to establish the character of defendant, but to explain the actions of the victim's son. Evidence that the son had reason to fear defendant was important; without it, the jury might have viewed the son's failure to go to his mother's aid as defying common expectations of behavior, making the son's testimony less credible. Moreover, the evidence was probative of the State's theory that the victim was afraid of defendant and was attempting to extricate herself and her family from a difficult relationship, which was contrary to defendant's theory that the relationship was continuing, and that the victim's story was a cover-up for her own infidelity. Although it was potentially prejudicial for the jury to learn of another incident in which defendant had physically attacked someone, the risk of misleading the jury with only part of the story may have exceeded the risk of prejudicing the jury against defendant because of a prior violent act. The fact that evidence is prejudicial is not alone sufficient to preclude its admission, provided that the prejudice does not substantially outweigh the probative value of the evidence. *State v. Parker*, 149 Vt. 393, 400, 545 A.2d 512, 516-17 (1988) (noting that "a determination that the evidence in question will 'prejudice' the defendant is not necessarily sufficient" to justify exclusion). The trial court was within its discretion to admit this testimony.

¶ 17. Defendant next challenges the trial court's failure to grant a mistrial as a result of the testimony of Trooper Maurice Lamothe, who responded to the emergency call to the victim's residence. Trooper Lamothe testified on redirect that he attempted to interview the victim and defendant "out of earshot" of each other because it is his experience that he gets a better version of the story, "the real truth," if he separates the parties. Defendant argued that this statement was inappropriate because it could be construed as impermissible commentary on whether a key witness for the State had told the truth in a prior statement. The court denied the motion for mistrial because the trooper's comments were unlikely to affect the jury's consideration of the victim's credibility.

¶ 18. Our standard of review on the trial court's denial of a motion for mistrial is deferential. *State v. Messier*, 2005 VT 98, ¶ 15, 178 Vt. 412, 885 A.2d 1193 ("The disposition of a motion for mistrial is discretionary, and, as such, a claim of error can be supported only where the trial court's discretion was either totally withheld, or exercised on clearly untenable or unreasonable grounds."). A review of the record shows it was defendant's counsel who first mentioned the subject of the trooper's training in domestic violence situations. In his opening argument, in reference to the victim, he stated, "She comes out and she talks to the officer, and she talks to him after, as the officer is trained to do, he has [her] in one place, [defendant] is over away." Defendant's counsel then cross-examined Trooper Lamothe about the procedure to be followed at the site of a domestic-violence complaint. The testimony elicited by defendant's counsel showed that it was the trooper's standard procedure to separate the parties. Defendant's counsel asked the trooper whether the reason for separating the parties was "because you want to see if there can be a statement made by one person not in the presence of the other, correct?" Trooper Lamothe replied, "That's correct."

¶ 19. The obvious inference from defendant's question is that people generally feel they can speak more freely when they are "out of earshot" of the other person involved in the situation, and are therefore more likely to tell the truth when they are alone with an officer. In fact, defendant was attempting to raise precisely this inference in an effort to show that the victim was telling the truth in her statement at the time of the incident, which was different from her testimony at trial, and more favorable to defendant. The trooper's affirmation on redirect regarding the general reason for the separation procedure did not amount to a comment on any specific person's credibility. Therefore, defendant's reliance on *State v. Catsam*, 148 Vt. 366, 371, 534 A.2d 184, 188 (1987), where we held that testimony from an expert witness was impermissible because it was tantamount to a direct statement that the complaining witness was telling the truth, is misplaced. To the extent the trooper's statement could be construed as raising an inference regarding the victim's credibility, it was a repetition of defendant's own point on cross-examination. Under these circumstances, we agree with the trial court that the trooper's description of his training and experience did not give cause for a mistrial.

¶ 20. Defendant also contends the trial court erred in admitting seven letters he wrote to the victim while he was awaiting trial. He argues that these letters were both irrelevant and prejudicial. The

letters were admitted through the victim as admissions of defendant and because the letters were relevant to the victim's credibility. Defendant objected in a preliminary discussion, but when the court asked defense counsel to respond to the State's offer to admit the seven letters, defense counsel said, "No objection." We need not determine whether this objection was preserved for appeal, however, as there was no error.

¶ 21. While defendant was incarcerated, he and the victim communicated through numerous letters and telephone calls. The victim testified that defendant tried, through these communications, to get her to "tell the truth." According to the victim, though, the "truth" defendant referred to was the version he had detailed in the nine-page script, not introduced at trial, that set forth his position on every factual issue in the case. Defendant's version, not surprisingly, was that the incident did not happen. According to defendant's instructions, the victim was to explain away the events by reference to sexual abuse she had endured in childhood. She was to explain away the physical evidence gathered, such as her torn underwear, by stating that the underwear had been torn on a doorknob. Defendant also pressured the victim to control other people's testimony, including offering to pay them for his preferred version. She was to deny that defendant had ever hit her son. In fact, the victim was to type and memorize the nine-page script and have it notarized at the town clerk's office, as if it were a legal document. The victim was to "read it over and over, test yourself on it in your mind through[out] the day."

¶ 22. Defendant argues that these letters were prejudicial because they tended to show that he had attempted to suborn perjury, and thus, had committed a prior bad act. In response, the State cites *State v. Reuschel*, 131 Vt. 554, 312 A.2d 739 (1973), in which the trial court admitted a letter written by a defendant on trial for first-degree murder to a former cellmate because the letter showed the defendant's consciousness of guilt. In that letter, the defendant attempted to convince the cellmate, who had heard him confess to the killing, to testify in his favor. On appeal, we upheld the trial court's decision to admit the letter, noting that the letter was directly relevant to the principal issue at trial, the guilt or innocence of the defendant. *Id.* at 560, 312 A.2d at 742-43 (distinguishing facts from *State v. Beyor*, 129 Vt. 472, 282 A.2d 819 (1971), which resulted in reversal where prosecutor cross-examined defendant regarding various admissions that

created unfavorable impression of defendant, but had nothing to do with charged offense). We conclude defendant's letters to the victim, like the letter in *Reuschel,* demonstrated defendant's consciousness of his guilt. Moreover, the letters tended to support the victim's story at trial that she did not tell the truth earlier because she had been controlled by and afraid of defendant. Because the letters directly addressed the issues the jury had to resolve, the trial court could have properly determined that their probative value outweighed their prejudicial effect, and accordingly, the letters were properly admitted.

## IV. Closing Argument

■ ¶ 23. Defendant next claims it was error to permit the State, in its closing argument, to remark on the tendency of victims of domestic violence to stay in their abusive relationships, when the State had presented no evidence of such a tendency through expert testimony. Defendant made no objection, and we therefore review this claim for plain error. *State v. Martel,* 164 Vt. 501, 503, 670 A.2d 845, 847 (1995). Comments made during closing argument are not plain error "unless they are so manifestly and egregiously improper that there is no room to doubt the prejudicial effect." *Id.* at 506, 670 A.2d at 849.

¶ 24. The prosecutor made three comments about relationships marked by domestic violence. The first was that people who are victims of domestic violence often stay in those relationships, and the facts before the court were "clearly that kind of situation." Second, the prosecutor indicated that individuals stay in abusive relationships because they feel guilty and afraid, and because they are being intimidated and controlled. In the third comment, the prosecutor opined that people who are in abusive relationships can be in love with their partners and yet scared of them at the same time, and that it "happens all the time." These statements were made in response to defendant's closing argument, in which defendant's counsel suggested that the victim was not credible because the relationship with defendant continued even after the sexual assaults. In rebuttal, the prosecutor called upon the common experience of the jury to recognize that abusive relationships can continue in circumstances that are incomprehensible to outsiders.

¶ 25. We addressed a similar situation in *State v. Martel.* There, the defendant's counsel argued in closing that if the relationship between the defendant and the complainant was as violent and abusive as alleged, the relationship would not have continued, and therefore, the complainant's testimony could not be credible. The prosecutor coun-

tered with the statement that "from our own experience it's universal knowledge today that there are people who remain involved with someone in an intimate relationship after physical abuse." *Id.* at 506, 670 A.2d at 849 (internal quotations omitted). The defendant failed to move for a mistrial after objecting to the statement, and we did not find plain error because the statement occurred only once, a curative instruction was given, and the prosecutor's conduct was not inflammatory and did not attack the defendant's character. *Id.*

¶ 26. Although the comments here were more numerous than those in *Martel*, we reach the same conclusion: there was no plain error, if error at all. In deciding whether to reverse for improper closing argument, we have considered numerous factors, including, but not limited to,

> the blatancy of the challenged statement, the impact on the theory of the defense, the persistence and frequency of the statement, the opportunity for the court to minimize potential prejudice, the strength of the evidence supporting the relevance of the statement, the overall strength of the State's case, the apparent motivation for making the remarks, and whether the statement was inflammatory and attacked defendant's character.

*State v. Hemond*, 2005 VT 12, ¶ 12, 178 Vt. 470, 868 A.2d 734 (mem.) (citations omitted).

¶ 27. We reiterate that the prosecutor's comments cannot be viewed in isolation. Each of the general comments about domestic violence noted above was connected to specific pieces of evidence in the case, including testimony from the victim that she was afraid of defendant, and that she hated him, but also loved him. The prosecutor's statements were an attempt to reconcile this testimony, as well as the victim's conduct subsequent to the assaults, with the jury's general expectations of how victims of sexual assault and domestic abuse behave. It was reasonable to rebut defendant's counsel's statements in his closing argument that the victim's subsequent conduct was a reason to disbelieve her allegations by appealing to the jury's common knowledge that some abusive relationships continue despite repeated battery.

¶ 28. Defendant disputes this proposition, citing *State v. Swift*, 2004 VT 8A, 176 Vt. 299, 844 A.2d 802, but our conclusion is not inconsistent

with *Swift*. In *Swift*, we held it was error for the trial judge to use "Battered Women's Syndrome" as a basis for instructing the jury that it could not consider the victim's decision to remain in an abusive relationship as evidence that her allegations were not credible. *Id.* ¶¶ 10-23. In other words, the court itself could not decide this issue relating to the victim's credibility as a matter of law. *Id.* ¶¶ 21-23. Although there was no expert evidence presented at trial in *Swift* regarding the psychological effects of domestic abuse, our decision would have been the same if there were. *Id.* ¶ 12 ("Even if the State had presented [expert] evidence, the instruction was incorrect on the law regarding the proper role of the jury in these cases."). Here, after hearing both closing arguments, the jury remained free to give whatever weight it chose to the evidence regarding the victim's credibility, and thus, there was no error similar to the one we examined in *Swift*. Allowing the prosecutor's statements was not plain error.

## V. Cumulative Error

¶ 29. As a final matter, defendant argues that, whether or not any of his individual claims of error merit reversal, we should reverse his convictions because the cumulative effect of these alleged errors was sufficient to render his trial unfair. See *Aiken*, 2004 VT 96, ¶ 9 ("The court may grant a new trial if it believes that the cumulative effect of numerous concerns, no one of which can be characterized as reversible error, amounted to a miscarriage of justice."). As we have not identified any prejudicial errors above, there is no basis for such a conclusion. We thus affirm defendant's convictions.

*Affirmed.*