*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2012-232

JUNE TERM, 2013

| | |
|---|---|
| State of Vermont | } APPEALED FROM: |
| | } |
| | } Superior Court, Chittenden Unit, |
| v. | } Criminal Division |
| | } |
| | } |
| Frank Berard | } DOCKET NO. 1067-3-11 Cncr |

Trial Judge: James R. Crucitti

In the above-entitled cause, the Clerk will enter:

Defendant appeals from a judgment of conviction, based on a jury verdict, of lewd or lascivious conduct with a child. He contends: (1) the evidence was insufficient to prove the requisite element of intent; and (2) the court erred in ruling that it would reopen the evidence to allow the State to admit prior-bad-act evidence if defendant argued lack of intent in closing. We affirm.

The evidence may be summarized as follows. Additional material facts will be set forth in the following discussion. Defendant's grandchild, D.F., was seven at the time of the incident in question, which occurred in the summer of 2007. D.F. was spending the day with defendant at his apartment in Burlington because her mother was sick. D.F. testified that she asked defendant for a kiss because she missed her mother, and they decided to time the kiss using the microwave oven timer. D.F. recalled that defendant kissed her on the lips for eighty seconds, and that it felt "gross." They then kissed again. After eating and spending time at a playground, D.F. returned to the apartment with defendant and they timed another kiss, which lasted sixty seconds. After this, D.F. testified that defendant "put his hand on my head and pushed my head towards his lips, and then he put his tongue in my mouth." She did not immediately tell her mother about the incident because she was concerned that it would affect their relationship with defendant.

Although unaware of the incident at the time, D.F.'s mother testified that, a few weeks later, she observed defendant—her father—kiss D.F. on the lips for at least ten seconds; she felt this was inappropriate and told him to kiss her only on the cheek. Mother described the family as generally not very "huggy-kissy" and explained that she only kissed D.F. on the cheek. Some time thereafter, she observed defendant ask D.F. for a goodbye kiss, which D.F.—looking uncomfortable—refused. Later that day, D.F. returned to the house from visiting a friend and was crying and very upset. D.F. thereupon told her mother about the incident in which defendant had "stuck his tongue down in my mouth." D.F.'s mother confronted defendant later that same day, but he denied D.F.'s accusation, claimed that she had put her tongue in his mouth, and warned mother that if she took "this to court, I'm going to take it to full jury trial. What's that going to do to D.F.?"

Mother did not immediately report the incident to the police out of a concern for D.F.'s well being, but she suspended contact with defendant. Later, during the course of an unrelated investigation, she told a police investigator about the incident. In response, an officer with the Vermont State Police specializing in sex crimes interviewed D.F. The officer testified that D.F. described an incident in which she and defendant played a "kissing game" in his apartment to see how long they could kiss, that they timed themselves on the microwave, and that one kiss lasted eighty seconds. She also told the officer that defendant had "French kissed" her, which she described as "tongue-on-tongue."

Defendant did not testify and presented no evidence. The jury returned a verdict of guilty on the one count charging defendant with lewd or lascivious conduct with a child under sixteen, "by having contact between his lips and tongue and D.F.'s mouth," with the intent of arousing, appealing to, or gratifying the lust, passions or sexual desires of such person or of such child," in violation of 13 V.S.A. § 2602(a)(1). Defendant thereafter filed a motion for acquittal or new trial, asserting—among other claims—that the evidence was insufficient to prove that the acts were done with the intent to arouse, appeal to, or gratify the lust, passions or sexual desires of defendant. Defendant also claimed that defense counsel was "inhibited" from arguing about the lack of evidence of intent by the trial court's ruling that it would allow the State, in response, to reopen the evidence to present certain prior-bad-act evidence.[1]

The trial court denied the motion, finding that the "context in which the kissing occurred" demonstrated the requisite intent, explaining: "The usual fashion in which the family displayed affection, the isolated nature of the kissing, using a game to obtain the victim's cooperation and the response of the defendant when confronted by the child's mother provide sufficient evidence from which the jury could have found beyond a reasonable doubt that the defendant's actions were intended to arouse, appeal to or gratify his lust, passions or sexual desires." The court also reaffirmed its ruling that the prior-bad-act evidence proffered by the State was relevant to rebut any claim "of [defendant's] 'good' intent or accident or mistake," and would have been properly admitted had defendant argued such a position in closing. This appeal followed.

Defendant renews his claim that the evidence was insufficient to prove beyond a reasonable doubt that he acted with the intent of gratifying his sexual passion or desires. "In reviewing the sufficiency of the evidence to support a conviction, we take the evidence in the light most favorable to the State, excluding any modifying evidence." State v. Desautels, 2006 VT 84, ¶ 7, 180 Vt. 189. Applying this standard, we conclude that the evidence reasonably supports the verdict. As we have explained, the requisite intent for the commission of a lewd or lascivious act under the statute must be determined from "all the circumstances," including "the defendant's extrajudicial statements, other acts of lewd conduct admitted or charged in the case, the relationship of the parties, and any coercion, bribery, or deceit used to obtain the victim's cooperation or avoid detection." State v. Squiers, 2006 VT 26, ¶ 11, 179 Vt. 388 (quotation omitted). Here, there was sufficient circumstantial evidence to support an inference that defendant's intent was to gratify his own "lust, passions or sexual desires," including the unusually lengthy and repetitive kisses that preceded the inherently suggestive "French kiss," the use of a "game" as a cover for defendant's behavior, and

---

[1] Defendant also argued that kissing a child or putting a tongue in the child's mouth was not a lewd or lascivious act. The trial court rejected the argument in its decision denying the motion, and defendant has not renewed the claim on appeal.

especially defendant's reaction when confronted with his actions—initially denying the allegation, then accusing D.F. of inserting her tongue in his mouth, and finally threatening to subject D.F. to the stress and embarrassment of trial if mother pursued the allegation. See, e.g., People v. Calusinski, 733 N.E.2d 420, 426 (Ill. App. Ct. 2000) (holding that evidence was sufficient to show that defendant "french kiss[ed]" six year old for purpose of sexual arousal, noting that it was "an inherently sexual act which generally results in sexual excitement and arousal"); Davis v. State, 956 N.E.2d 726, 730 (Ind. Ct. App. 2011) (concluding that evidence was sufficient to show that defendant, who used her tongue in kissing child, acted with intent to satisfy sexual desires based on defendant's conduct and "the natural and usual sequence associated with 'tongue kissing' "). Defendant's claim that there could have been other "reasons why [defendant] might have done it" does not undermine this conclusion. See State v. Alexander, 173 Vt. 376, 386 (2002) (holding that, while there might be "several explanations" for defendant's conduct, evidence was sufficient to show that he acted with requisite intent to commit offense). Nor does the fact that defendant later kissed D.F. in front of mother necessarily demonstrate—as defendant claims—that his intent was innocent. Accordingly, we find no basis to conclude that the evidence was insufficient to support the verdict.

Defendant further contends the court erred in ruling that the State would be allowed to reopen the evidence to adduce certain prior-bad-act evidence if defendant disputed his intent in closing argument, and that his defense was impeded as a result. Prior to trial, the State filed a notice of intent to introduce evidence of three prior bad acts pursuant to V.R.E. 404(b); one involved another granddaughter, age eleven, whom defendant had allegedly induced to kiss him on the lips and warned that he would make her do it again if the kiss was too short; a second involved efforts by defendant to hug and kiss his granddaughter's friend; and a third involved another friend, also eleven, whom defendant allegedly asked to bend over so he could see and touch her breasts. In a pretrial hearing, the State indicated that it would not seek to introduce the evidence during its case-in-chief, but only in rebuttal if defendant claimed that his behavior was accidental or merely an expression of grandfatherly affection. The trial court took the matter under advisement, and the State filed a renewed motion just prior to trial reaffirming its intent to submit the evidence if defendant argued that the French kiss was merely "a demonstration of his affection." The court ruled that the evidence was relevant and admissible for the purpose advanced by the State, and that it would allow the State to introduce the evidence in rebuttal or after closing argument if defendant argued that his conduct was accidental or a mere showing of affection.

Defendant introduced no evidence. In closing, defense counsel asserted principally that the evidence was insufficient to prove the alleged offense, emphasizing discrepancies in D.F.'s story, and noting that there had previously been "an affectionate loving relationship" between them. Even assuming that the act had occurred, however, counsel argued that while the jury might find it to be in "bad taste" or "revolting," there was "not a shred of evidence that [defendant] was doing this to satisfy himself sexually."

This issue is waived because defendant did not make the argument that would trigger introduction of the bad act evidence, and the evidence was not admitted. See State v. Koveos, 169 Vt. 62, 71 (1999). Koveos involved a similar situation where the court ruled that if the defendant offered evidence of his intent, the State would be allowed to introduce specific bad-act evidence. Since the defendant did not offer the evidence that would trigger the State to act, and the State did not introduce the responsive evidence, we held: "Defendant's choice of a strategic path amounts to

3

a waiver of objections based on what might have occurred had he chosen the alternative." Id. That ruling applies here.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice