2013 VT 5

# State of Vermont v. Jerald Hawkins

[67 A.3d 230]

Nos. 11-203 & 11-384

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed January 18, 2013

Motion for Reargument Denied February 21, 2013

298

*William H. Sorrell*, Attorney General, and *John Treadwell* and *David Tartter*, Assistant Attorneys General, Montpelier, for Plaintiff-Appellee.

*Kyle C. Sipples* of *Zuccaro, Willis & Sipples, P.C.,* St. Johnsbury, for Defendant-Appellant.

¶ 1. **Burgess, J.** Defendant Jerald Hawkins appeals from his conditional guilty plea to criminal refusal of an evidentiary breath test in violation of 23 V.S.A. § 1201(b) and the civil suspension of his driver's license, claiming that the trial court erred in denying his motion to suppress evidence. Defendant argues that he was arrested without probable cause in violation of the Fourth Amendment of the United States Constitution and Article 11 of the Vermont Constitution. Alternatively, he argues that, even if supported by probable cause, the arrest violated the Fourth

Amendment and Article 11 due to excessive force. Defendant urges, further, that statements he made to police were obtained in violation of his rights under the Fifth Amendment of the U.S. Constitution and *Miranda v. Arizona*, 384 U.S. 436 (1966), as well as Article 10 of the Vermont Constitution. Defendant also contends he was entitled to judgment in the civil license suspension proceeding because the final hearing did not take place within the mandatory timeframe. We reverse in part, and remand.

¶ 2. The facts, drawn from the trial court's findings, are as follows. On October 10, 2009, at about six p.m., an Essex County deputy sheriff clocked defendant driving sixty-five miles per hour in a fifty-miles-per-hour zone along Route 102 in Maidstone. The deputy turned on his blue lights, but not his siren, and went after defendant. Before the deputy could catch up to him, defendant turned left onto Lovell Road, a private driveway serving a single camp. The deputy followed onto Lovell Road and saw that defendant's car was stopped. Defendant then resumed driving and, at a speed of about twenty-five miles per hour, crossed a washed-out part of the driveway that was about ten to twelve feet across and one to three feet deep, which caused defendant's car to bottom out. Cautious of the road's condition, the deputy did not follow, and, at some point, got out of his cruiser. Defendant drove another forty yards, eventually stopping some distance before a gate that blocked further travel.

¶ 3. Defendant got out of his car and began walking back toward the deputy sheriff, who was about sixty to seventy-five yards away. Defendant walked with a "shuffling" gate, but did not say or do anything threatening, and kept his empty hands visible. At this point, for what he characterized as "reasons of officer safety," the deputy drew his gun and ordered defendant to get on his knees, face away from him, and place his hands on his head. Defendant was handcuffed, put in the cruiser, and taken to the St. Johnsbury Police Department. While taking defendant to his cruiser, the deputy smelled alcohol on defendant's person and, during the trip to the police station, he observed that defendant had bloodshot eyes and spoke with slurred speech. At no point, however, did the deputy request that defendant perform field sobriety exercises, nor, prior to arriving at the station, did the deputy ask defendant any questions about alcohol consumption.

¶ 4. At the station, the deputy sheriff processed defendant for driving under the influence of alcohol. He started by asking

defendant the preliminary questions found at page one of the standard DUI processing form, including whether defendant had consumed any alcoholic beverages, how long it had been since his last drink, and how much he had drunk in the last thirty minutes. Turning to page two of the form, the deputy advised defendant of his *Miranda* rights before asking any further questions. Defendant signed a waiver of these rights and answered the questions at the bottom of page two concerning further details about drinking alcohol relative to time of operation. The deputy then advised defendant of his rights and obligations under Vermont's implied consent law, including his right to consult with an attorney before deciding whether to give an evidentiary breath sample. Defendant declined to speak with an attorney and refused to submit to a breath test.

¶ 5. Defendant was charged with criminal refusal of an evidentiary breath test in violation of 23 V.S.A. § 1201(b). Defendant moved to suppress all evidence obtained after the deputy drew his weapon, ordered defendant to his knees, and handcuffed him. He argued that the deputy's actions constituted an unlawful arrest and that therefore all evidence gained as a result of that arrest should be suppressed. Defendant also argued that his answers to the questions on the DUI processing form should be suppressed because they were acquired in violation of his *Miranda* rights. Defendant maintained that he was in custody for *Miranda* purposes upon being handcuffed at gunpoint and thus was entitled to *Miranda* warnings before being questioned. He further asserted that the unlawful questioning before the warnings rendered the subsequent *Miranda* warnings ineffective, so that his statements following the warnings should also be suppressed. The State countered that there was probable cause to arrest defendant for impeding a public officer in violation of 13 V.S.A. § 3001 and for negligent operation of a motor vehicle in violation of 23 V.S.A. § 1091(a) due to his crossing the washed-out section of the driveway so as to cause his car to bottom out. The State contested suppression of its physical evidence, and challenged suppression of defendant's statements made after *Miranda* warnings were delivered.

¶ 6. Filed contemporaneously with the criminal case was the State's civil action to suspend defendant's license to drive. The parties appeared for a preliminary hearing on October 29, defendant's arraignment date, and a final hearing was set for November

19, 2009, forty days after the alleged offense and twenty-one days after the preliminary hearing. Defendant moved for a continuance in order to depose the deputy, stating that defendant "waiv[ed] any time requirements affected by this continuance." The continuance was granted and the final hearing rescheduled for January 25, 2010.

¶ 7. The trial court initially granted the motion to suppress all evidence against defendant on March 16, 2010, and dismissed the civil suspension action. Agreeing that defendant was arrested upon being handcuffed at gunpoint, the court determined that the arrest was unsupported by probable cause since there was no evidence of impeding the officer, and no evidence that the supposed careless driving occurred on a "public highway" as required for the crime of negligent operation, rather than on a private driveway. 23 V.S.A. § 1091(a)(1). Looking to defendant's post-arrest statements, the court concluded that the *Miranda* warnings could not purge the taint of the underlying illegal arrest.

¶ 8. Moving for reconsideration, the State argued that the court erred in failing to deem the driveway a public highway as broadly defined for the offense of negligent operation. See 23 V.S.A. § 4(13). After a continuance requested by defendant, the reconsideration hearing set for June was reset for July, and decided on August 10, 2010. Upon reconsideration, the court reversed its prior decision, explaining first that the pertinent statutory definition of public highway included the camp driveway here and, second, that the question of negligence would be left for trial since the court could not hold that defendant's drive across the wash-out was not negligent as a matter of law. Finally, it concluded that "[a]lthough there was overlap between the pre- and post-*Miranda* questioning and there was no break, reviewing the totality of the circumstances, there is no evidence that the post-*Miranda* statements were involuntary, ineffective, or coerced." The civil suspension action was reinstated. Defendant responded with his own motion to reconsider, which was denied on February 1, 2011.

¶ 9. Final hearing on the civil suspension was convened almost three months later on April 29, 2011. On April 15, defendant had interposed a motion to dismiss for failure to hold the final hearing, as required by the statute, "within 21 days of the date of the preliminary hearing" and "no later than 42 days after the date of the alleged offense." 23 V.S.A. § 1205(h)(1). Defendant compared

the date of the court's last pretrial ruling on February 1 to the final hearing date of April 29, noting that "[t]his period alone is greater than twenty-one days." His motion to dismiss was taken under advisement by the trial court pending a decision on the merits, which, delivered from the bench, determined the State met its burden of proof for license suspension.

¶ 10. The motion to dismiss was next denied. Acknowledging the statutory deadlines, the court noted that the same statute allowed that the "final hearing may only be continued by the consent of the defendant or for good cause shown." *Id.* Understanding defendant's motion to dismiss as proposing a resurrection of the deadlines upon completion of interim motions, the court observed that defendant offered no authority in support of deadline reinstatement. Instead, the court treated defendant's continuance request and accompanying waiver of the time requirements as the consent necessary to exceed the deadlines under § 1205(h)(1). Upon judgment for the State in the civil suspension action, defendant entered his conditional plea to the criminal charge and appealed in both cases.

■ ¶ 11. There is no dispute that defendant initially waived the deadline, and the issue of the deadline's revival is a question of law that we examine de novo on appeal. See *Smith v. Desautels*, 2008 VT 17, ¶ 12, 183 Vt. 255, 953 A.2d 620 ("[S]tatutory construction . . . is a pure question of law."). Defendant reiterates, correctly, that the forty-two-day limitation is not merely directory, but mandatory. This much was confirmed in *State v. Singer*, cited by defendant, where the Court found to be mandatory the requirement expressed in the § 1205(h) proviso that "[i]n no event may a final hearing occur more than 42 days after the date of the alleged offense without the consent of the defendant or for good cause shown." 170 Vt. 346, 348-49, 749 A.2d 614, 616 (2000). The next sentence of the statute adds, as if to emphasize, that the "final hearing may only be continued by the consent of the defendant or for good cause shown." 23 V.S.A. § 1205(h)(1).

■ ¶ 12. As below, no authority is presented on appeal to support deadline revival. The statute does not say what defendant desires. Nothing in the legislative language reflects a design for the deadline to recur at any point following a continuance with defendant's consent. That the final hearing did not occur within either twenty-one or forty-two days of the last pretrial decision is

immaterial to the statutory mandate. The proposition that the deadline calendar should run again after the last pretrial motion is decided results only in a moving target in any event, since yet another motion cannot necessarily be precluded and the last decision could, depending on complexity, take days or months to issue. Defendant's proposed reintroduction of the statutory deadline after his waiver is declined.

¶ 13. We next address defendant's claim that the court erred in concluding that there was probable cause to arrest for negligent operation under 23 V.S.A. § 1091(a). We review the court's decision with a mixed standard of review. *State v. Arrington*, 2010 VT 87, ¶ 7, 188 Vt. 460, 8 A.3d 483. We review the court's factual findings for clear error and its legal conclusions de novo. *Id.*

¶ 14. Defendant does not challenge the trial court's findings, but contends that the facts do not support probable cause as a matter of law. Defendant undertakes a three-part assault on the probable cause issue. First, he argues that the private driveway in this case was not a "public highway" as required by 23 V.S.A. § 1091(a). Next, he asserts that he did not drive his car in a "negligent manner" as defined by the statute because he endangered no property or person of another. Finally, he submits that he was not negligent in driving over the washed-out portion of the driveway. Defendant is correct on his last point, so we do not address the first two.

¶ 15. It is undisputed that defendant was arrested when the deputy sheriff drew his gun, ordered defendant to his knees, and handcuffed him. See *State v. Chapman*, 173 Vt. 400, 403-06, 800 A.2d 446, 449-51 (2002) (concluding that defendant was placed under de facto arrest without probable cause because officer drew weapon without reasonable belief that defendant had committed or was committing crime). Under the Fourth Amendment and Article 11, a warrantless arrest must be supported by probable cause. See *Arrington*, 2010 VT 87, ¶ 11. Probable cause "exists when the facts and circumstances known to an officer are sufficient to lead a reasonable person to believe that a crime was committed and that the suspect committed it." *Id.* (quotation omitted).

¶ 16. The trial court denied suppression on the ground that the officer had probable cause to arrest defendant for negligent operation of a motor vehicle in violation of 23 V.S.A. § 1091(a)(1). See V.R.Cr.P. 3(b) (authorizing arrest without warrant for misde-

meanors committed in presence of police). Section 1091(a) pro-
scribes the "operat[ion] [of] a motor vehicle on a public highway
in a negligent manner." It further provides that "[t]he standard
for a conviction for negligent operation . . . shall be ordinary
negligence, examining whether the person breached a duty to
exercise ordinary care." 23 V.S.A. § 1091(a)(2). "Ordinary care" is
the level of care exercised by a "careful and prudent" person
under like circumstances. *Boutwell v. Champlain Realty Co.*, 89
Vt. 80, 90, 94 A. 108, 113 (1915). The court's finding of probable
cause, framed by the State's motion for reconsideration, was
based on defendant "operating his vehicle at approximately 25
mph across the washed-out section of road and bottoming out."
The crux, therefore, is whether defendant's driving of his car over
a rocky, uneven, dirt patch in an unpaved Vermont driveway at
this speed could constitute the type of carelessness that would
support a conviction for negligent operation.

■ ¶ 17. Guided by common experience, we agree with defend-
ant that, as a matter of law, driving over the washout as described
was not negligent, so there was no probable cause to arrest him
for negligent operation. Unpaved roads, including driveways, are
commonplace throughout Vermont, including Essex County.[1] These
roads are often primitive and rough. Over the seasons, they are
topped with dirt, snow, ice, and mud. They are studded with rocks
and frost heaves, pitted with potholes, wrinkled with washboards,
and, worn by weather and trucks, left uneven and, in places,
washed-out. To deliberately travel over such roads is a reality of
Vermont life, not a rash decision.

---

[1] According to the Vermont Agency of Transportation, in 2008 there were 7930
miles of traveled dirt roads in Vermont, as compared with 7040 miles of paved
roads. Mapping Unit-General Interest Stats, Vermont Agency of Transportation,
Public Paved and Dirt Roads Statewide, http://www.aot.state.vt.us/planning/mapgis/
mapping_stats.htm. In a report dated November 2010, Essex County had 225 miles
of traveled dirt roads, versus 163 miles of paved roads, while the Town of
Maidstone had 12 miles of dirt roads, versus 8 miles of paved roads. Paved and
Dirt Roads Report by County, Vermont Agency of Transportation, http://
www.aot.state.vt.us/Planning/Documents/Mapping/Publications/Surface_byCounty.pdf
Paved and Dirt Roads Report by County and Town, Vermont Agency of Trans-
portation, http://www.aot.state.vt.us/Planning/Documents/Mapping/Publications/
Surface_byCountyTown.pdf. The county and town figures post-date defendant's
arrest by more than a year, but, assuming no paved roads replaced dirt roads
during that time, it would be safe to presume that there were *at least* as many
dirt roads in Essex County and Maidstone in October 2009 as in November 2010.

■ ¶ 18. Viewed another way, the court's decision would mean that every time a public highway in this condition is so used a crime could be charged, and any driver operating on a back road in March would risk prosecution. Such an application of the statute is too broad, and no reasonable jury could find negligence on these facts. See *State v. Free*, 170 Vt. 605, 606, 749 A.2d 622, 624 (2000) (mem.) (stating "where reasonable minds cannot differ" court can decide as matter of law whether defendant is guilty of grossly negligent operation of motor vehicle); see also *LaVallee v. Vt. Motor Inns, Inc.*, 153 Vt. 80, 85, 569 A.2d 1073, 1075 (1989) (explaining that trial court properly considered evidence of motel industry's "practice and custom" in determining whether motel was negligent for failure to provide sufficient emergency lighting); Restatement (Second) of Torts § 295A (1965) ("In determining whether conduct is negligent, the customs of the community . . . are factors to be taken into account, but are not controlling where a reasonable man would not follow them."). Defendant's estimated speed of twenty-five miles per hour does nothing to change this conclusion since there was no evidence that his speed was excessive under the circumstances, or unnecessary to traverse the washout as he did. The trial court erred, therefore, in concluding that the physical condition of the driveway, coupled with defendant's estimated speed, could support what amounts to a prima facie case that defendant operated his car in a negligent manner in violation of § 1091(a). Because these facts could not constitute negligent operation, his arrest on that basis was unlawful. Defendant's statements to the deputy in the course of subsequent interrogation were the product of that unlawful arrest and consequently must be suppressed.[2]

■ ¶ 19. The question nevertheless remains whether the physical evidence obtained after defendant's unlawful arrest need also be suppressed as fruit of the poisonous tree. Evidence obtained in violation of the Fourth Amendment and Article 11, or "by exploitation" of a violation, is inadmissible against a criminal defendant. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963); *State v. Pitts*, 2009 VT 51, ¶ 19, 186 Vt. 71, 978 A.2d 14 (explaining that Article 11 provides protection equal or greater than Fourth Amendment); *State v. Badger*, 141 Vt. 430, 452-53, 450 A.2d 336,

---

[2] We do not address whether statements taken in violation of *Miranda* and the Fifth Amendment are suppressible in the civil suspension proceeding as well.

349 (1982) ("Evidence obtained in violation of the Vermont Constitution, or as a result of a violation, cannot be admitted at trial as a matter of state law."). There is a general presumption that evidence obtained after an illegal arrest is the tainted product of unlawful government action. See *United States v. Crews*, 445 U.S. 463, 471 (1980) (explaining that where evidence is seized after Fourth Amendment violation "most cases begin with the premise that the challenged evidence is in some sense the product of illegal governmental activity").

■ ¶ 20. The question in most cases, therefore, is "whether the chain of causation proceeding from the unlawful conduct has become so attenuated or has been interrupted by some intervening circumstance so as to remove the 'taint' imposed upon that evidence by the original illegality." *Id.*; *Badger*, 141 Vt. at 440, 450 A.2d at 342 (stating that second relevant inquiry in fruit of poisonous tree analysis is "whether intervening events break the causal chain and dissipate the effect of the taint"). The temporal closeness between the arrest and the subsequent acquisition of evidence is also of prime importance. See *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975) (explaining that "temporal proximity of the [unlawful] arrest and the confession [and] the presence of intervening circumstances" are factors in fruit of poisonous tree analysis). In *Brown*, for example, the U.S. Supreme Court held that a defendant's custodial statements made following his unlawful arrest should have been suppressed, reasoning primarily that less than two hours passed between his illegal arrest and first statement and that there was no intervening event. 422 U.S. at 604-05; see also *Kaupp v. Texas*, 538 U.S. 626, 633 (2003) (concluding that defendant's confession should have been suppressed where no "substantial time passed between [his] removal from his home in handcuffs and his confession after only 10 or 15 minutes of interrogation").

¶ 21. The determination of probable cause to arrest for negligent operation is reversed. The trial court has yet to consider if the State met its burden to show that whatever physical evidence, including his refusal to submit to a breath test, was not acquired by the deputy in exploitation of defendant's unlawful arrest. See *Brown*, 422 U.S. at 604 (holding that it is for State to show that its evidence was not fruit of poisonous tree under *Wong Sun*). Accordingly, we remand for findings and a determination, based

on the existing record evidence, on defendant's motion to suppress all physical evidence obtained following his arrest.

*Affirmed as to the denial of defendant's motion to dismiss the civil suspension action; reversed and remanded on the remaining motion to suppress.*