NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2019 VT 58

No. 2018-263

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Bennington Unit, |
| | Criminal Division |
| | |
| Ellie May Morse | June Term, 2019 |

William D. Cohen, J.

David Tartter, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and Dawn Seibert, Appellate Defender, Montpelier,
  for Defendant-Appellant.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1. **EATON, J.** Defendant was charged with simple assault on a law enforcement officer, disorderly conduct, and resisting arrest as a result of her encounter with law enforcement officers outside a motel in Bennington in August 2014. Following a trial by jury, defendant was convicted of disorderly conduct and resisting arrest and acquitted of simple assault. After the verdict, defendant challenged her convictions through motions for a new trial and judgment of acquittal, alleging the evidence was insufficient to support the convictions. Defendant appeals from the denial of those motions. We affirm.

¶ 2.     The facts supporting the verdicts are as follows.[1] Two of defendant's teenage sons were staying at the Southgate Motel, which was adjacent to the Fife and Drum Motel where defendant was staying. One of the sons got in a dispute with the manager of the Southgate, who asked the two boys to leave and then called the Bennington police. Four Bennington police officers responded, arriving at about 9 p.m. The officers were met with yelling directed at them by the boys. The yelling continued as the boys made their way to the Fife and Drum. The officers followed the boys to the motel to discuss their behavior. As the first two officers approached the Fife and Drum, defendant, who had been outside smoking a cigarette, stepped in front of them to block them from going into the motel. The first two officers were able to get past her. However, as the second two officers approached, defendant blocked them from getting past. She was swearing and yelling at them in a loud and boisterous manner, telling them that they had no right to be there and that they had to leave, and that they could not talk with her sons.

¶ 3.     Defendant then began moving toward the first pair of officers, who had their backs turned to her. As one of the second two officers tried to move past her, she raised her arm, and the officer reacted by grabbing her arm, spinning her around, and attempting to handcuff her. Defendant struggled and stiffened her arms, and her cigarette came in contact with the officer's left forearm. Defendant was then placed under arrest.

¶ 4.     A jury trial was held on the three charges on March 20, 2018. The judge required the State to elect whether the State was asserting the disorderly conduct charge based upon fighting, tumultuous, or threatening behavior. The State elected to charge defendant with disorderly conduct by engaging in tumultuous behavior. Prior to charging the jury, the court held

---

[1] On appeal, when reviewing a challenge to sufficiency of the evidence, we view all facts in the light most favorable to the verdict. State v. Desautels, 2006 VT 84, ¶ 2 n.1, 180 Vt. 189, 908 A.2d 463 ("For the purposes of reviewing the sufficiency of the evidence, we view any disputed facts in the light most favorable to the verdict."); see also State v. Viens, 2009 VT 64, ¶ 2, 186 Vt. 138, 978 A.2d 37 (responding to defendant's challenge to sufficiency of State's evidence and reviewing record "in the light most favorable to the verdict").

a jury-charge conference. The court indicated that it intended to charge the jury that the State was alleging defendant engaged in tumultuous behavior "by her statements and words." Three times in the charge conference the State indicated concern that actions, not just words, were required to sustain a conviction for disorderly conduct based upon engaging in tumultuous behavior. In one exchange about the court's proposed disorderly conduct charge, the State said:

> "By engaging in tumultuous behavior by her statements and words." Well, I'm concerned about that, that it's limited to words, Judge, because the obvious defense to that is she's there expressing herself and exercising her constitutional right against police with involvement with her sons and so on. And initially, again, when we had—before we started the trial, you had indicated your understanding would be that she got in front of the officers and threw her arms up. See, I'm also concerned, too, by limiting "engaged in tumultuous behavior by her statements and words," that down there in the third—moving down the third essential element is that she engaged in tumultuous behavior. "Tumultuous behavior" means violent outburst or chaotic activity. That seemed to suggest more than words. And so I think by the testimony, Judge, that . . . it's both statements and actions. It's words and actions by Ms. Morse that were the tumultuous behavior.

Later, the State added:

> So again, I think there's just more than just words because—well, either that, or then instruct the defense that they're not—either they can't somehow argue that they have a—that she's got a constitutional right to voice her concerns and her free speech, and that her words, in this case, were protected by the First Amendment.

¶ 5. When defense counsel spoke at the charge conference, she endorsed the proposed "statements and words" instruction and disavowed any concern that more than words were required for an action to be tumultuous. Defense counsel stated:

> I think that the instruction is fine the way that it is, Your Honor. I did argue in my opening statement that it is not illegal to assert your rights to the police. You can tell the police to leave. You can tell the police that they don't have a right to be there. And I would probably reiterate that in my closing. I'm not requesting that Your Honor include a protected speech instruction in the disorderly conduct, because the officers' testimony was also that she used obscenities and other things like that when she was speaking. So I

3

> think that it's up to the jury to decide whether or not her words were enough to rise to the level of a disorderly conduct.

(Emphasis added.)

¶ 6. The trial court gave the instruction, which defense counsel had endorsed, that "statements and words" were sufficient to constitute tumultuous behavior for purposes of disorderly conduct. On appeal, defendant now asserts, for the first time and directly contrary to her position below, that defendant's conviction for disorderly conduct must be reversed because it was based upon speech alone. Further, defendant argues that since speech alone is insufficient to constitute tumultuous behavior, there was no probable cause for the disorderly conduct charge. Therefore, the police had no basis to arrest her and the subsequent resisting-arrest charge was the fruit of this illegal arrest.

¶ 7. We assume without deciding that defendant's reading of the disorderly conduct statute on appeal is correct. Nonetheless, we hold that defendant has waived her challenge to her conviction under this statute by agreeing during the trial court proceedings that the proposed "statements and words" charge was an accurate statement of the law, and thereby agreeing that words alone are sufficient to constitute disorderly conduct. Under the "invited error doctrine," a "branch of the doctrine of waiver," a party cannot "induc[e] an erroneous ruling and later seek[] to profit from the legal consequences of having the ruling set aside." State v. Longe, 170 Vt. 35, 39 n.*, 743 A.2d 569, 572 n.* (1999) (quotation omitted). There is no standard of review in such cases; the party who invites the error waives or "intentional[ly] relinquish[es]" their right to challenge it on appeal. United States v. Olano, 507 U.S. 725, 733 (1993) (quotation omitted); see also State v. J.S., 2018 VT 49, ¶ 21, 207 Vt. 379, 189 A.3d 552 (recognizing invited error where defendant challenged on appeal standard that trial court used to decide whether to revoke his youthful-offender status, despite defense counsel's having conceded at trial that court would be on "strong ground" to use this standard (quotation omitted)); Fancher v. Benson, 154 Vt. 583, 587-

4

88, 580 A.2d 51, 53-54 (1990) (holding that defendants waived their claim that trial court erred in failing to instruct jury that plaintiff's agent was in fact plaintiff's agent by stating at charge conference, "I think it's up to the jury to decide whether [she] is an agent or not." (quotation omitted)). The invited error doctrine prevents a party from essentially having veto power over the proceedings by eliminating their right to challenge an invited error and request a new trial if the original trial does not result in a ruling favorable to them. See State v. Massey, 169 Vt. 180, 185, 730 A.2d 623, 627 (1999) (citing Rash v. Waterhouse, 124 Vt. 476, 477-78, 207 A.2d 130, 132 (1965)); see also State v. Smith, 2010 VT 15, ¶ 8 n.4, 187 Vt. 600, 992 A.2d 310 (mem.) (citing United States v. Cruz–Rodriguez, 570 F.3d 1179, 1183 (10th Cir. 2009) to note distinction between "invited error, which bars review where a party deliberately considers an issue and makes an intentional decision to forego it, and plain error, which is subject to review when a party through neglect fails to make a proper objection" (quotations and alteration omitted)).

¶ 8.     In this case, defense counsel agreed unequivocally to a jury instruction that charged the jury with determining whether defendant engaged in "tumultuous behavior by her statements and words" alone. Despite clear concerns raised by the State, defense counsel stated, "I think that the instruction is fine the way that it is, Your Honor," and advocated that the court should allow "the jury to decide whether or not [defendant's] words were enough to rise to the level of a disorderly conduct." There is no hint that she held any reservations about the instruction accurately stating the law.

¶ 9.     Yet, on appeal, defendant claims error in the same reading of the disorderly conduct statute that defense counsel advocated for below. Defendant now argues that her conviction cannot stand because it "was based entirely on [her] 'statements and words to the police at the Fife and Drum Motel,' " while the disorderly conduct statute under which she was charged criminalizes behavior, not speech. This is exactly the type of practice the invited error doctrine aims to prevent. Defendant may not inject error into the proceedings by advocating for one type of jury instruction

5

and then attempt to "profit from the legal consequences" of the error by challenging the same instruction on appeal. Longe, 170 Vt. at 39 n.*, 743 A.2d at 572 n.* (quotation omitted).

¶ 10. It may be that defense counsel's support for the court's interpretation of the disorderly conduct statute was a tactical decision and that she supported such an instruction because she felt it would afford her client the best chance of an acquittal on the disorderly conduct charge. But even if this were the case, we do not grant relief for tactical decisions that seem ill-advised in retrospect. See Fancher, 154 Vt. at 584, 587-88, 580 A.2d at 52-54 (refusing to grant relief where defendants agreed to jury instruction at trial and then claimed instruction was incomplete to their detriment after $25,500 jury verdict against them). Applying the invited error doctrine, we hold that defendant waived her right to challenge the disorderly conduct conviction.

¶ 11. Defendant next argues that because tumultuous behavior cannot be based on "statements and words" alone, the officer lacked probable cause to arrest her for disorderly conduct. As such, she claims that the arrest was unlawful, and therefore the resisting arrest charge cannot be sustained. We find defendant's argument unpersuasive because the evidence demonstrates the officer had sufficient probable cause to arrest defendant for disorderly conduct, rendering the arrest lawful.

¶ 12. As explained above, defendant agreed to the court's "statements and words" standard when instructing the jury on disorderly conduct at trial, yet she challenges her disorderly conduct conviction on appeal on the basis that the court's application of this agreed-upon standard was impermissible—this was invited error resulting in waiver. See supra, ¶¶ 6-10. Defendant now attempts to project the "statements and words" standard that she injected into the trial proceedings—and now rejects—upon the officer's probable-cause determination to challenge the underlying arrest. In determining whether probable cause to arrest existed, we review factual findings for clear error and legal conclusions de novo. State v. Hawkins, 2013 VT 5, ¶ 13, 193 Vt. 297, 67 A.3d 230. "A law enforcement officer may arrest without a warrant a person whom the

6

officer has probable cause to believe has committed or is committing a misdemeanor in the presence of the officer. Such an arrest shall be made while the crime is being committed or without unreasonable delay." V.R.Cr.P. 3(b). "If, upon later review, an officer is found not to have had probable cause, the arrest is unlawful." State v. Betts, 2013 VT 53, ¶ 31, 194 Vt. 212, 75 A.3d 629.

¶ 13.    Whether probable cause exists is evaluated under an objective standard. State v. Richard, 2016 VT 75, ¶ 14, 202 Vt. 519, 150 A.3d 1093. In other words, "[p]robable cause exists when the facts and circumstances known to an officer are sufficient to lead a reasonable person to believe that a crime was committed and that the suspect committed it." Hawkins, 2013 VT 5, ¶ 15 (quotation omitted). Probable cause is not a technical standard, but a practical, commonsense evaluation made by looking at the "totality of the circumstances." State v. Guzman, 2008 VT 116, ¶ 11, 184 Vt. 518, 965 A.2d 544.

¶ 14.    Here, we look for whether the arresting officer had probable cause to believe that defendant's behavior amounted to disorderly conduct at the time of her arrest. We have sustained a conviction for disorderly conduct where, for instance, a defendant, handcuffed to a hospital bed, repeatedly slammed that bed "into the wall with such force that it had to be separated from the wall to avoid damage." State v. Amsden, 2013 VT 51, ¶¶ 17-18, 194 Vt. 128, 75 A.3d 612. We have also done so where a defendant swore at a sheriff, refused to sit upon that sheriff's request, repeatedly stood up after the sheriff sat him down, and attempted to bite the sheriff's hand. State v. Lund, 144 Vt. 171, 173, 178-79, 475 A.2d 1055, 1057, 1060-61 (1984), overruled on other grounds by State v. Begins, 148 Vt. 186, 531 A.2d 595 (1987).

¶ 15.    Here, defendant's loud and boisterous swearing outside of the motel, combined with her raising her arm and blocking an officer as he tried to move past her, provided the officers

7

with probable cause to arrest her for disorderly conduct.[2]  Like the defendants in <u>Amsden</u> and <u>Lund</u>, defendant here was loud and boisterous.  Furthermore, similar to the defendant in <u>Lund</u>, she was impeding law enforcement, albeit in a less extreme manner than the defendant in that case.  A reasonable officer could believe defendant was engaged in disorderly conduct here, satisfying our objective standard for determining whether probable cause exists.  And because there was probable cause to believe the defendant was engaged in tumultuous behavior, the arrest here was lawful, and the resisting arrest charge may stand.[3]

        <u>Affirmed</u>.

                                                                    FOR THE COURT:


                                                                    _____
                                                                    Associate Justice

---

[2] Defendant claims her arrest for disorderly conduct "was based on [her] statements and words to the police."  But police did not arrest defendant until they attempted to move past her and she raised her arm.  Prior to this physical act, defendant had been yelling and swearing at police "very, very boisterous[ly]" and was not arrested.  To the extent that defendant implies her arrest was based <u>only</u> on her statements and words to police, we do not agree.

[3] We note that although defendant was ultimately charged with disorderly conduct based only on her "statements and words," the court is not limited to considering only her statements and words in determining whether the officer had probable cause to arrest defendant on that charge.  Rather, as stated above, the court must examine whether a reasonable officer would believe there to be probable cause based on the circumstances present at the time of the arrest.  <u>Hawkins</u>, 2013 VT 5, ¶ 15.  Whether the jury charge was correct or whether defendant was ultimately acquitted of the charge is irrelevant to establishing whether there was probable cause for the underlying arrest.  See <u>Illinois v. Gates</u>, 462 U.S. 213, 243 n.13 (1983) ("[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.  By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause . . . ."); <u>State v. Perley</u>, 2015 VT 102, ¶ 20, 200 Vt. 84, 129 A.3d 93 (quoting <u>Gates</u>, 462 U.S. at 243 n.13).

8