NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 30

No. 2018-355

| State of Vermont | Supreme Court |
| --- | --- |
| | |
| | On Appeal from |
| v. | Superior Court, Bennington Unit, |
| | Criminal Division |
| | |
| Henry M. Clinton-Aimable | October Term, 2019 |

David A. Howard, J. (motion to suppress); David A. Barra, J. (final judgment)

David Tartter and James Pepper, Deputy State's Attorneys, Montpelier, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and Dawn Matthews, Appellate Defender, Montpelier, for Defendant-Appellant.

PRESENT: Reiber, C.J., Robinson and Eaton, JJ., and Dooley, J. (Ret.) and Pearson, Supr. J. (Ret.), Specially Assigned

¶ 1. **DOOLEY, J. (Ret.), Specially Assigned.** Defendant appeals his conviction of knowing and unlawful possession of more than one ounce of cocaine. On appeal, he argues that the court erred in denying his motion to suppress. We conclude that the seizure of defendant's car was not supported by probable cause and that therefore the evidence seized from defendant's car was not admissible. Accordingly, we reverse the court's order denying the motion to suppress and vacate defendant's conviction.

¶ 2. Defendant was charged with possession of cocaine following a traffic stop. Prior to trial, he moved to suppress the cocaine recovered from his vehicle on several grounds. The court found the following facts relative to his motion to suppress.

¶ 3.    In July 2016, Officer Murawski of the Bennington Police Department received a tip about possible illegal drug activity.  The person providing the tip was known to the officer but had not provided information in the past.  The tipster said that a particular type of vehicle might be engaged in illegal drug activity and the driver would be the son of a man, named by the tipster, who police knew to have past drug involvement.  The tipster said that the vehicle would be coming from Springfield, Massachusetts between 2:00 and 4:00 p.m.  Officer Murawski did not believe that the information provided a sufficient basis to stop a vehicle matching the description provided but shared the information with some officers, including Officer Cole.

¶ 4.    Aware of this information, Officer Cole was parked south of Bennington on Route 7 in an unmarked vehicle.  He observed a vehicle, that matched the description in the tip to Officer Murawski, traveling north, pull into a gas station without signaling and then turn around and proceed south.  Officer Cole activated his blue lights and followed the vehicle.  The vehicle went 700 to 1000 yards before pulling over.

¶ 5.    Officer Murawski was parked further north on Route 7 in a marked cruiser and drove to where Officer Cole had stopped the vehicle.  When he arrived, the other vehicles were parked, and he stopped in front of defendant's vehicle.  Officer Grande also responded in an unmarked vehicle.  He parked away from the others and approached on foot.

¶ 6.    Officer Grande informed the others that he did not think the vehicle was in park because the brake lights were on, and this put the officers on alert to a possible safety issue because the operator could quickly drive off.  All three officers drew their firearms.  Officer Cole held his down at his side; Officer Murawski held his behind his back; and Officer Grande was some distance away and behind the vehicle. The weapons were not visible to the vehicle occupant. The weapons were holstered after the officers approached the car and confirmed that defendant's vehicle was in park.

2

¶ 7.     Defendant was the driver and sole occupant of the vehicle.  Officer Cole spoke to defendant and asked for his license and registration.  He did not observe any weapons in the car.  Defendant provided a valid license.  The registration indicated the vehicle had been rented.[1]  Defendant's last name was not the same as that of the person given in the tip as the father of the driver.  None of the officers asked defendant whether he was the son of the man named in the tip.[2]

¶ 8.     Officer Murawski was at the passenger window and detected an odor of marijuana coming from the vehicle.  In response to this officer's questions about defendant's travel, defendant reported that he was going to Albany, New York, to see his sister and was coming from Pittsfield, Massachusetts.  He said he was in Bennington to see a girl but did not provide details about where the girl lived or where he was meeting her although he was asked to give those details.  He did not explain why he turned around in the gas station to go south.  Officer Murawski noted aerosol cans in the vehicle and that defendant was smoking.  He explained in his affidavit that in his training and experience, smoking and air fresheners can be used to mask the odor of drugs and rental cars are often used to transport drugs.  During defendant's interaction with the officers, he was extremely nervous, he was not making eye contact, and his hands were shaking.

¶ 9.     Officer Murawski asked defendant to voluntarily leave the vehicle, and defendant declined.  Officer Murawski then ordered defendant to exit the vehicle and briefly drew his weapon when he could not see defendant's hands.  Defendant raised his hands on leaving the vehicle.  He continued to be noticeably nervous.  The officer told defendant not to move.  Defendant surrendered a bag of 4.5 grams of marijuana after the officers expressed suspicion that defendant had drugs and stated that they smelled marijuana.  The officers could not see any drugs or weapons in the car.

---

[1]  There was a mix up with the registration that was attributable to the rental car company and not to defendant.

[2]  The State later determined that defendant was not the son of the person named in the tip. See, infra, note 3.

¶ 10.    The officers asked defendant to consent to a search of his vehicle, and he declined. The officers then announced they were seizing the vehicle. They arranged for a tow truck to transport the vehicle to a storage location. With defendant's consent, the officers retrieved some items for defendant from the vehicle. Defendant received a ticket for failing to use his turn signal when he turned off the road into the gas station lot.

¶ 11.    Police obtained a search warrant for the vehicle, and drugs were found in a concealed area in the trunk. Defendant was then charged with possession of cocaine.

¶ 12.    Defendant moved to suppress the drugs found in the vehicle on several bases. First, he argued that he was subject to a de facto arrest without probable cause when three officers from three different vehicles approached him with their guns drawn. Second, defendant contended that the facts and circumstances did not provide reasonable suspicion warranting an exit order from his vehicle. Third, he argued that the police lacked probable cause to seize the vehicle and to obtain a warrant to search it.

¶ 13.    Following a hearing, and based on the facts set forth above, the court denied the motion to suppress. The court concluded that defendant's failure to use a directional signal provided grounds to stop the vehicle and that the initial stop was not converted into an illegal arrest without probable cause. The court reasoned that because of defendant's unusual operation and the use of the brake, which caused the brake lights to remain on, the officers were justified in drawing but not brandishing their weapons. In addition, the court held that the totality of the circumstances justified extending the stop. These facts included the general information from the tip that the vehicle could be involved in drug activity.[3] The court found that ordering defendant out of the car was reasonable given the odor of marijuana, defendant's unusual behavior in pulling into the gas

_____

[3] At the suppression hearing, Officer Murawski testified that the man named by the tipster was a lean black male. He explained that he did not question defendant during the stop regarding his relation to this man and later learned that there was no relation. The trial court commented on the officers' failure to pursue the identity of defendant in relation to the person named in the tip: "This is a glaring gap in the grounds for their suspicions, but the court does not find it fatal."

station and then abruptly turning around, the contradictory information provided by defendant about his travel plans, and the other facts that in the officers' training and experience indicated possible drug activity—the rental car, the aerosol and smoking to cover the odor of drugs, and defendant's extreme nervousness. The court further concluded that this information, along with the marijuana surrendered by defendant, provided probable cause to seize and search the vehicle. Accordingly, the court denied the motion to suppress.

¶ 14. Defendant waived a jury trial, and the court held a bench trial on the charge. In a written order, the court denied defendant's motion to reconsider the suppression motion. The court found defendant guilty beyond a reasonable doubt, and defendant appealed.

¶ 15. On appeal, defendant argues that the court erred in denying his motion to suppress. He generally reasserts the bases argued below: (1) police action during the traffic stop was so intrusive that it amounted to an illegal arrest without probable cause; (2) police lacked reasonable suspicion to justify the exit order; and (3) the seizure of the vehicle and warrant to search it were not supported by probable cause.

¶ 16. "A trial court's decision on a motion to suppress is a mixed question of fact and law, that is, whether the factual findings supported by the record lead to the conclusion that, as a matter of law, suppression of evidence was or was not necessary." State v. Allis, 2017 VT 96, ¶ 6, 205 Vt. 620, 178 A.3d 993 (quotation omitted). We apply a clearly erroneous standard to the trial court's factual findings and review de novo the legal conclusions. Id.

¶ 17. Police officers may "make an investigatory stop based on a reasonable and articulable suspicion of criminal activity or of a traffic violation." State v. Davis, 2007 VT 71, ¶ 7, 182 Vt. 573, 933 A.2d 224 (mem.) (quotation and citation omitted). Police can require an operator to exit a vehicle under Article 11 of the Vermont Constitution if " 'objective facts and circumstances would support a reasonable suspicion that the safety of the officer, or of others, was at risk or that a crime has been committed.' " State v. Dubaniewicz, 2019 VT 13, ¶ 15, __ Vt. __,

5

208 A.3d 619 (quoting State v. Sprague, 2003 VT 20, ¶ 16, 175 Vt. 123, 824 A.2d 539). In addition, officers can extend a detention if "during the course of an investigative stop, an officer gathers additional information providing reasonable suspicion that some other criminal activity is afoot." Id. (quotation omitted).

¶ 18. Probable cause is required to execute a warrantless seizure of a vehicle. State v. Platt, 154 Vt. 179, 184-85, 574 A.2d 789, 792 (1990). In addition, a warrant to search the vehicle must be supported by probable cause, which "exists when the affidavit sets forth such information that a judicial officer would reasonably conclude that a crime had been committed and that evidence of the crime will be found in the place to be searched." State v. Senna, 2013 VT 67, ¶ 8, 194 Vt. 283, 79 A.3d 45 (quotation omitted). This Court defers to "the judicial officer's factual determinations and inferences drawn therefrom, [and] we review de novo the ultimate legal question of whether an affidavit's factual claims amount to probable cause." Id.

¶ 19. We conclude that the facts here did not provide probable cause to seize defendant's vehicle based on the suspicion that it contained illicit drugs or related items. Therefore, we do not reach the questions of whether there was an illegal arrest, whether there was reasonable suspicion to order defendant to exit his vehicle, or whether the warrant was supported by probable cause.

¶ 20. Probable cause is a "fact-specific determination, turning on whether the particular circumstances establish a nexus between the crime, the suspect, and the place to be searched." Zullo v. State, 2019 VT 1, ¶ 77, __ Vt. __, 205 A.3d 466 (quotation omitted). To determine whether probable cause exists, we apply a totality-of-the-circumstances test. Id.

¶ 21. The State relied on the following facts to support the warrantless seizure of defendant's vehicle. There was an odor of raw marijuana coming from the vehicle. Defendant was smoking a cigarette and had aerosol cans in the car. Defendant reported he was coming from Pittsfield, Massachusetts, was on his way to Albany, New York, and had stopped in Bennington to see a girl. He did not, however, respond to questions about where the girl lived or where they

6

were meeting and, when he was stopped, he was traveling in the opposite direction, going away from his announced destination of Albany, New York. Defendant was extremely nervous. After defendant exited the vehicle, he gave police a clear plastic bag containing green leafy material, which the officer in his professional opinion determined was marijuana. Defendant admitted he was smoking a cigarette to mask the odor of marijuana. In addition, police claimed that in their professional experience (1) individuals trafficking narcotics keep a small amount of drugs on their person in an effort to end the investigation, (2) drug couriers often use rental cars to distance themselves from contraband found in a vehicle, (3) cigarette smoking and aerosol cans are used to mask the odor of drugs, and (4) defendant's nervousness was more pronounced than typically displayed during public contact with law enforcement.[4]

¶ 22. We conclude that these facts, viewed under the totality of the circumstances, are insufficient to provide probable cause that the vehicle contained drugs and to seize it.

¶ 23. We address initially the information provided in the tip. For three main reasons, we do not consider it as bearing on probable cause. First, the tip did not meet the standards of Vermont Rule of Criminal Procedure 41 because there was no "substantial basis for believing the

---

[4] The affidavit accompanying the warrant to search defendant's vehicle states that defendant had past convictions for breaking and entering, larceny, possession with intent to distribute cocaine, possession with intent to distribute marijuana, and possession of cocaine and marijuana. The record indicates that this information was not known to the officers at the time they seized the vehicle and therefore we do not consider it in evaluating whether there was probable cause to effectuate a warrantless seizure of the vehicle. We note that in State v. Cunningham, we considered whether law enforcement information that defendant had "prior drug involvement" could be considered as establishing reasonable suspicion. 2008 VT 43, ¶ 22, 183 Vt. 401, 954 A.2d 1290 (quotation marks omitted). We concluded that nonspecific information about prior drug involvement did not support a prolonged detention and noted that "many courts have held that even a prior arrest or conviction does not support a reasonable suspicion of present illegal activity," citing decisions from the Fifth and Tenth Circuits. Id. ¶ 23 (citing United States v. Jones, 234 F.3d 234, 242 (5th Cir. 2000); United States v. Sandoval, 29 F.3d 537, 542 (10th Cir. 1994)). Because defendant's criminal history information was not known to the officers before the vehicle was seized, we do not have to decide what weight, if any, it deserves in this case. We note, however, that if we were reluctant to allow reliance on prior criminal activity to establish reasonable suspicion, we would be even more reluctant to allow it alone to be used to show probable cause that a present crime has been committed.

source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." V.R.C.P. 41(d)(1). While the rule by its terms applies to hearsay in an affidavit in support of a warrant, it would make no sense to have the tip information considered in determining whether there was probable cause to support the seizure of the vehicle and not considered in determining whether to authorize a search of the same vehicle. The inconsistency is particularly apparent because the State did not submit the tip information to the court in support of its request for the warrant.

¶ 24.    Second, the failure to match the actual driver of the vehicle with the person who the tip identified as the driver particularly undercuts the value of the tip.

¶ 25.    Finally, the tip was so vague and general that it was of limited value even if it met the requirements of Criminal Rule 41 and properly identified the driver. According to the findings of the trial judge, the tipster said that a "particular vehicle <u>might</u> be engaged in illegal drug proceedings." (Emphasis added.) The officer went on to testify at the hearing on the motion to suppress that "the details were very general that the vehicle had been seen in a location where illegal drug transactions had occurred and had been operating and parking in a manner that suggested possible drug transaction involvement with people approaching it, but no actual drug transaction [was] seen." The tipster did not opine that the vehicle would be carrying drugs or even why the vehicle was being driven to Vermont.

¶ 26.    Therefore, we examine the remaining facts used by the State to support seizure of the vehicle. As to defendant's smoking and the presence of air fresheners in the car, we have explained that although these items can be used to mask odors from drug use, they are also "commonplace items ubiquitously used by persons who do not use marijuana." Zullo, 2019 VT 1, ¶ 78. Here, defendant admitted that his smoking was intended to mask the smell of the marijuana he was carrying. These items provide minimal support for the suspicion that there were additional illicit drugs in the vehicle.

¶ 27. The State also relies on the facts that defendant made an abrupt turn, that his direction of travel did not match his stated destination, and that he did not provide details about his travel plans. The relevance of defendant's turn around in the gas station is unclear. Officer Cole had followed defendant for a short distance, but he was in an unmarked vehicle and had not turned on his flashing lights or siren before defendant turned around. There is no indication in the evidence that defendant became aware he was being followed by a police vehicle before Officer Cole turned on his flashing lights and siren, which happened after defendant had turned around. We recognize that "unusual or conflicting travel plans can give rise to reasonable suspicion." State v. Tetreault, 2017 VT 119, ¶ 32, 206 Vt. 366, 181 A.3d 505. In fact, we noted in State v. Cunningham, 2008 VT 43, ¶ 26, that in some circumstances "a person's failure to provide a plausible reason for his presence in a particular place might contribute strongly to an officer's reasonable suspicion, and might even be a factor in determining probable cause to arrest." We gave as an example, a case in which a defendant was "found hiding alone behind a bush in the desert in the middle of the night within walking distance of an airstrip where 700 pounds of cocaine had been intercepted that night." Id. (citing United States v. Carrillo, 902 F.2d 1405 (9th Cir. 1990)). In Cunningham, defendant "was simply present—openly and in broad daylight—on a public thoroughfare . . . about fifteen miles from his home," and we concluded that his failure to explain why he was in the location where he was found did "not bear any weight in establishing a reasonable suspicion of criminal activity." Id. This case is factually much more similar to Cunningham than to Carrillo, and the standard here is probable cause, not reasonable suspicion. While the evidence about defendant's vague travel plans was not wholly irrelevant, it is of limited weight in determining probable cause.

¶ 28. Moreover, defendant's nervousness has minimal relevance to the question of whether there was probable cause to search the vehicle for illicit drugs. See Cunningham, 2008 VT 43, ¶ 24 ("The defendant's nervousness provides only meager support for a reasonable,

9

articulable suspicion of drug activity."). Nervousness in police presence is a factor to be considered in the evaluation of the totality of the circumstances but, in this case, we place little weight on the officer's observation that defendant was extremely nervous during his encounter with law enforcement. The U.S. Supreme Court has observed "that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." Illinois v. Wardlow, 528 U.S. 119, 124 (2000). In that case, the Court concluded that there was reasonable suspicion sufficient to justify an investigatory stop where officers were in an area known for heavy narcotics trafficking and defendant fled when he saw police. Id.

¶ 29. Nervous behavior in the presence of police has not, however, been enough to meet the probable-cause standard. The U.S. Supreme Court held that police lacked probable cause to arrest a man based on the facts that he was nervous and paid cash for an airline ticket to New York, a "target city." Florida v. Royer, 460 U.S. 491, 507 (1983). Justice Stevens, in analyzing the degree of suspicion to be attached to flight, acknowledged that it might indicate guilt and additionally stated:

> Among some citizens, particularly minorities and those residing in high crime areas, there is also the possibility that the fleeing person is entirely innocent, but, with or without justification, believes that contact with the police can itself be dangerous, apart from any criminal activity associated with the officer's sudden presence.

Wardlow, 528 U.S. at 132 (Stevens, J., concurring and dissenting). Similarly, nervous behavior in the presence of police officers could be indicative of illegal behavior but could be completely innocuous. It is not uncommon for citizens to be nervous when confronted by law enforcement.

¶ 30. This leaves the smell of marijuana and defendant's voluntary surrender of marijuana. We recognize that other jurisdictions have held that the smell of marijuana, alone or in combination with other facts, provides probable cause to seize and search a vehicle. See, e.g., State v. Robertson, 2019 MT 99, ¶¶ 28-29, 440 P.3d 17 (holding that probable cause existed for warrant to search truck for marijuana where application stated that officer smelled marijuana

10

coming from truck and occupants voluntarily turned over container of marijuana and pipe). But see Wingate v. State, 819 S.E.2d 502, 504 (Ga. Ct. App. 2018) (concluding warrant not supported by probable cause where affidavit indicated that officer smelled strong odor of marijuana coming from building but did not include representation that officer who detected odor was qualified to recognize odor of marijuana).

¶ 31. Defendant contends that this case is different because defendant possessed a recreational amount of marijuana. We do not, as defendant urges, hold that recreational amounts of marijuana cannot be considered at all to evaluate probable cause to seize or search. At the time of the seizure of defendant's vehicle, possession of small amounts of marijuana established a civil violation, not a crime. See 18 V.S.A. § 4230a(a) (2016) (imposing civil penalty for possession of one ounce or less of marijuana); id. § 4230a(c)(2) (providing that section is "not intended to affect the search and seizure laws afforded to duly authorized law enforcement officers"). Simply because possession of small amounts of marijuana is not a crime does not require law enforcement to disregard the odor of marijuana in establishing probable cause that a crime has been committed. See Senna, 2013 VT 67, ¶ 16 (concluding that despite medical marijuana law allowing possessing of marijuana, smell of marijuana could be considered "as an indicator of criminal activity" to establish probable cause); People v. Zuniga, 2016 CO 52, ¶ 20, 372 P.3d 1052 (holding that odor of marijuana could be considered in totality-of-circumstances test for probable cause even though possession of small amounts was lawful and observing that "[a] possible innocent explanation or lawful alternative may add a level of ambiguity to a fact's probative value in a probable cause determination, but it does not destroy the fact's usefulness outright and require it to be disregarded").

¶ 32. We have observed that "the odor of marijuana, detected by a trained and experienced police officer, can provide a reasonable basis to believe that marijuana is present." State v. Guzman, 2008 VT 116, ¶ 14, 184 Vt. 518, 965 A.2d 544. This remains true. Nonetheless,

11

the smell of marijuana alone will not always be enough to establish probable cause of criminal activity and is just one factor to be considered. Id. The weight to be given to the smell depends on "the nature and strength of the odor and other factors accompanying the odor" and "how those factors relate to the offense being investigated." Zullo, 2019 VT 1, ¶ 82. For example, "the faint smell of burnt marijuana is far less probative as to whether a car contains marijuana than, say, an overpowering odor of fresh marijuana emanating from the trunk of a car." Id.

¶ 33. Here, the officer's testimony at the hearing on the motion to suppress was that he smelled raw marijuana when he stood by the vehicle at the time when defendant was still inside. After defendant exited the vehicle pursuant to the officer's order, the officer confronted defendant with the officer's belief that he smelled marijuana. At that point, defendant produced the less-than-one-ounce-of raw marijuana that was on his person. There was no evidence that any of the officers continued to smell the odor of marijuana emanating from the vehicle or the location of the smell within the vehicle. Thus, there was no evidence that the vehicle contained more marijuana than what defendant had voluntarily surrendered such that the total amount could have exceeded the one-ounce limit. We are left with the proposition that the presence of an amount of marijuana that is not a crime to possess is sufficient to establish probable cause that defendant possessed additional marijuana in criminal amounts or drugs other than marijuana. We cannot accept the logic of this proposition.

¶ 34. We recognize that the State also asserts that defendant's voluntary surrender of the bag of marijuana to the officers was indicative of other criminal activity. On appeal, the State emphasizes Officer Murawski's testimony at the suppression hearing that, in his professional opinion, drug dealers often possess recreational amounts of drugs on their person to seek to end police investigations. Again, the logic of this proposition is suspect. Defendant would be in a better position to avoid a search of his vehicle if he had no drugs on his person than if he had a small amount of a drug he was willing to acknowledge he possessed. This argument does not

change our conclusion that the presence of marijuana was relevant to the probable-cause determination but of little weight.

¶ 35. Overall, the State urges that probable cause did exist in this case and relies mostly on Tetreault, 2017 VT 119. In Tetreault, this Court concluded that a trooper had reasonable suspicion to believe that drug-related activity was occurring based on the following facts: defendant's stated travel plans did not coincide with the timing of his trip; defendant was coming from a city known as a source of drug trafficking in Vermont; defendant reached down during his encounter with police, appearing to hide something; defendant acted nervous and his voice was trembling; defendant had a prepaid phone and air freshener; a confidential informant stated that defendant was involved in selling and transporting drugs; and the trooper observed marijuana in the car. Id. ¶¶ 30-31. Although many of the facts and circumstances in Tetreault are also present in this case, a critical difference is that the question in that case was whether there was reasonable suspicion and this case concerns whether there was probable cause to seize the vehicle. See State v. Lamb, 168 Vt. 194, 196, 720 A.2d 1101, 1102 (1998) ("The reasonable suspicion standard is less demanding than probable cause for an arrest or a search warrant."). Moreover, in Tetreault, the basis for reasonable suspicion was supported in part on information from a confidential informant, a fact not presented here.

¶ 36. In sum, we conclude that the seizure of the vehicle defendant was driving was not supported by probable cause. The question remains whether the ensuing warrant was therefore invalid. "Evidence obtained in violation of the Fourth Amendment and Article 11, or by exploitation of a violation, is inadmissible against a criminal defendant." State v. Hawkins, 2013 VT 5, ¶ 19, 193 Vt. 297, 67 A.3d 230 (quotation omitted). The question is whether "the chain of causation proceeding from the unlawful conduct has become so attenuated or has been interrupted by some intervening circumstance so as to remove the taint imposed upon that evidence by the original illegality." Id. ¶ 20 (quotation omitted). Here, even assuming the warrant application

provided probable cause to search,[5] the illegal seizure of defendant's vehicle was so closely related to the subsequent application for the warrant and search of defendant's vehicle as to require exclusion of the evidence obtained. If the vehicle had not been seized, defendant would have been able to drive it away before a warrant was obtained and the search occurred. Thus, the results of that search must be suppressed. Therefore, we reverse the denial of defendant's motion to suppress the drugs found in the car and vacate defendant's conviction.

The order denying defendant's motion to suppress is reversed, his conviction is vacated, and the matter is remanded.

FOR THE COURT:

_____
Associate Justice (Ret.), Specially Assigned

¶ 37.    **REIBER, C.J., concurring.**    Although not specifically presented or addressed, an underlying question in this appeal is the extent to which defendant's race played a role in the decisions by police to stop and search him and his car. It is well documented that people of color are disproportionately stopped and searched by police, even in Vermont. See S. Seguino & N. Brooks, Driving While Black and Brown in Vermont iv (Jan. 9, 2017), http://www.uvm.edu/giee/pdfs/SeguinoBrooks_PoliceRace_2017.pdf [https://perma.cc/F5FR-W933] (detailing differences in how black and brown drivers are treated by police, including that "Black drivers are four times more likely to be searched, subsequent to a stop, than White drivers"); A. Thompson, Stopping the Usual Suspects: Race and the Fourth Amendment, 74 N.Y.U. L. Rev. 956, 957 (1999) ("The police target people of color, particularly African Americans, for stops and

_____

    [5] There were some differences between the information available to the officers at the time of seizure and the information provided in the warrant; most significantly, the warrant application provided information about defendant's criminal record. As explained, we do not reach the question of whether the information in the warrant would have provided probable cause to search the vehicle.

14

frisks."). Police may consider innocent actions, such as a suspect's nervous and evasive behavior, in assessing whether there is reasonable suspicion or probable cause, but this practice disproportionately impacts people of color. A. Ghiotto, Traffic Stop Federalism: Protecting North Carolina Black Drivers from the United States Supreme Court, 48 U. Balt. L. Rev. 323, 353 (2019) (explaining that black drivers might have a greater subjective fear of police interaction and therefore might exhibit behavior that leads to police interaction). Consideration of nervousness as a factor in determining whether police have reasonable suspicion or probable cause is problematic for all citizens. State v. Talbot, 792 P.2d 489, 494 n.11 (Utah Ct. App. 1990) ("[C]itizens will avoid contact with police for reasons other than fear of being caught for a crime they have committed. A completely innocent person may wish to avoid the delay which a discussion with police may entail; others have a fear of police authority; still others resent and seek to avoid the 'hassle' of a stop which lacks any basis."), disapproved of on other grounds by State v. Lopez, 873 P.2d 1127 (Utah 1994). For people of color, however, this fear is augmented. "A black driver, impacted by the entirety of the black American experience, may likely become extremely nervous when face-to-face with a police officer while stopped on the side of the road." Ghiotto, supra, at 364.

¶ 38.   Given these facts, I question whether nervous behavior exhibited by a person of color should ever be used as a factor in determining whether police have reasonable suspicion or probable cause.

_____

Chief Justice